**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| SMART MOBILE TECHNOLOGIES LLC, | |
| Plaintiff, | |
| | Case No. 6:21-cv-00603-ADA |
| v. | |
| | **JURY TRIAL DEMANDED** |
| APPLE INC. | |
| Defendant. | |

**APPLE INC.'S OPPOSED MOTION TO TRANSFER VENUE PURSUANT TO**
**28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   FACTS ................................................................................................................2

    A.    Defendant Apple ....................................................................................3

    B.    Plaintiff Smart Mobile Technologies LLC .............................................4

    C.    Relevant Third Parties............................................................................5

        1.    The inventors of the asserted patents are all located in NDCA. .................5

        2.    Broadcom and Qualcomm Witnesses are in California, not Texas .............6

III.  LEGAL STANDARD...........................................................................................6

IV.   NDCA IS CLEARLY THE MORE CONVENIENT VENUE FOR THIS CASE............8

    A.    This Case Could Have Been Brought In NDCA. ....................................8

    B.    The Private Interest Factors Favor Transfer to NDCA............................8

        1.    The sources of proof are in California, not Texas. ..............................8

        2.    Key third parties are subject to compulsory process in NDCA. ...............10

        3.    The attendance of willing witnesses strongly favors transfer....................11

        4.    The "all other practical problems" factor is neutral or slightly favors transfer. ...........................................................................13

    C.    The Public Interest Factors Favor Transfer To NDCA...........................13

        1.    There are no administrative difficulties stemming from court congestion that weigh against transfer to NDCA. ..................................13

        2.    The local interest factor strongly favors transfer to NDCA......................14

        3.    Familiarity with the governing law and conflicts of law are neutral. ........15

V.    CONCLUSION....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Acer America Corp.*,
    626 F.3d 1252 (2010) ..........................................................................................................11

*In re Adobe, Inc.*,
    823 F. App'x 929 (Fed. Cir. 2020) ...............................................................................13, 14

*Aguilar-Ayala v. Ruiz*,
    973 F.2d 411 (5th Cir. 1992) ...............................................................................................10

*In re Apple Inc.*,
    No. 2020-127, 2020 WL 3249953 (Fed. Cir. 2020) ..............................................................7

*In re Apple, Inc.*,
    581 F. App'x. 886 (Fed. Cir. 2014) ...................................................................................10

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
    No. 6:15-cv-00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) ......................................7

*Collaborative Agreements, LLC. v. Adobe Sys. Inc.*,
    No. 1-14-CV-356, 2015 WL10818739 (W.D. Tex. Aug. 21, 2015) ......................................8

*DataQuill, Ltd. v. Apple Inc.*,
    No. 13-ca-706, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ...........................................15

*Datascape, Ltd. v. Dell Techs., Inc.*,
    No. 6:19-cv-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019) .............................12

*Gemalto S.A. v. CPI Card Grp. Inc.*,
    No. 15-CA-0910, 2015 WL 10818740 (W.D. Tex. Dec. 16, 2015) ......................................10

*In re Genentech, Inc.*
    566 F.3d 1338 (Fed. Cir. 2009)........................................................................ *passim*

*In re Google Inc.*,
    2017 WL 977038 ................................................................................................................13

*In re Google*,
    No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021).................................................15

*In re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009)................................................................................7, 10, 15

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re HP Inc.*,
  No. 2018-149, 2018 WL 4692486 (Fed. Cir. 2018) ........................................7, 12

*Infogation*, No. 6:20-cv-00366-ADA ........................................................................12

*In re Juniper Networks*,
  14 F.4th 1313 (Fed. Cir. 2021) (Fed. Cir. 2021)....................................10, 11, 14, 15

*Koss Corp. v. Plantronics, Inc.*,
  No. 6:20-CV-00663-ADA, 2021 WL 2075685 (W.D. Tex. May 20, 2021) ........................8, 9

*In re NetScout Sys., Inc.*,
  No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)....................................13

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009) ........................................................................7

*Peak Completion Techs., Inc. v. I-TEC Well Solutions, LLC*,
  No. A-13-cv-086-LY, 2013 WL 12121002 (W.D. Tex. June 26, 2013) ..........................12

*In re Samsung Elecs. Co.*,
  2 F.4th 1371 (Fed. Cir. 2021) ..........................................................................13

*Smart Mobile Technologies LLC v. Samsung Electronics Co. Ltd. et al.*,
  No. 6:21-cv-00701-ADA .................................................................................13

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014)..........................................................................7

*In re TS Tech.*,
  551 F.3d 1315 (Fed. Cir. 2008)........................................................................15

*Uniloc USA, Inc. v. Apple Inc.*,
  No. A-18-CY-990-LY, 2019 WL 2066121 (W.D. Tex. Apr. 8, 2019)...........................12

*Uniloc USA Inc. v. Box, Inc.*,
  No. 1:17-CV-754-LY, 2018 WL 2729202 (W.D. Tex. June 6, 2018).............................8

*Via Vadis, LLC v. Netgear, Inc.*,
  No. 14-cv-809, 2015 WL 10818675 (W.D. Tex. July 30, 2015)................................12

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ................................................................6, 7, 11, 14

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ....................................................................1, 6, 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*XY, LLC v. Trans Ova Genetics, LC*,
   No. W-16-CA-00447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ................................8

**Statutes**

28 U.S.C. § 1400(b) ..........................................................................................................8

28 U.S.C. § 1404(a) ...............................................................................................1, 6, 13

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(A), (B) ......................................................................................10

Local Rule CV-5(a) ..........................................................................................................18

Local Rule CV-7(i) ...........................................................................................................18

Defendant Apple Inc. ("Apple") respectfully moves under 28 U.S.C. § 1404(a) to transfer this case filed by Plaintiff Smart Mobile Technologies LLC ("Smart Mobile") to the Northern District of California ("NDCA").

## I.    INTRODUCTION

The center of gravity of this action is in NDCA, with no connection to Waco, Texas.  As such, under a straightforward application of the *Volkswagen* factors, this case should be transferred to NDCA because it is the clearly more convenient venue.  Indeed, this case has numerous direct connections to NDCA, but none to Waco, and only a minimal connection, at best, to this District as a whole.  On the most critical factor in the transfer analysis—the convenience of relevant witnesses—there are numerous such witnesses in NDCA and not a single one in Waco.  In particular, nine likely Apple witnesses—Apple engineers with knowledge of the accused technology, Apple personnel with knowledge of the sales and marketing of the accused products, and Apple's licensing personnel—are based in NDCA.  And although Apple's investigation is continuing, every one of the relevant third parties Apple has identified thus far—including the three inventors of the asserted patents—are in California, where they will be subject to subpoena for trial in NDCA, while none are located in Texas.  For instance, a significant portion of the accused technology is provided by chips supplied by third parties Qualcomm and Broadcom, whose likely witnesses are all based in California.  The availability of compulsory process over these likely third-party witnesses in NDCA is a significant fact that favors transfer.

Here, because all of the key factors favor transfer and none favor keeping this case in Waco, this case should be transferred to NDCA.

## II.     FACTS

Smart Mobile filed suit on June 11, 2021, accusing a variety of Apple iPhones, iPads, Apple Watches and Apple TVs (the "accused products") of infringing thirteen related patents: U.S. Patent No. 8,442,501 (the "'501 patent"), U.S. Patent No. 8,472,936 (the "'936 patent"), U.S. Patent No. 8,472,937 (the "'937 patent"), U.S. Patent No. 8,761,739 (the "'739 patent"), U.S. Patent No. 8,824,434 (the "'434 patent"), U.S. Patent No. 8,842,653 (the "'653 patent"), U.S. Patent No. 8,982,863 (the "'863 patent"), U.S. Patent No. 9,019,946 (the "'946 patent"), U.S. Patent No. 9,049,119 (the "'119 patent"), U.S. Patent No. 9,191,083 (the "'083 patent"), U.S. Patent No. 9,319,075 (the "'075 patent"), U.S. Patent No. 9,614,943 (the "'943 patent"), and U.S. Patent No. 9,756,168 (the "'168 patent") (collectively, the "asserted patents").  Smart Mobile's claims are based on Apple's alleged implementation of two different functionalities. The first is called multipath TCP ("MPTCP"), which is the ability to communicate with a network—receiving and transmitting data—using both cellular and WiFi, either at the same time or switching between the two.  Dkt. No. 1 ("FAC") ¶¶ 39-44.  Smart Mobile contends that this accused functionality is made available to, and used by, various applications, including Wi-Fi Calling, FaceTime, Wi-Fi Assist, Siri, Maps, and Music.  *Id.*  All of Apple's engineers who work on the research, design, development, and implementation of the accused MPTCP feature work in NDCA.  Declaration of Mark Rollins ("Rollins Decl.") ¶¶ 9-14.

The second of the features that Smart Mobile points to is referred to as multiple-input, multiple output ("MIMO") functionality, Dkt. No. 1 ¶¶ 45, 46, which is a method for multiplying the capacity of a radio link using multiple transmission and receiving antennas for transmitting and receiving data.  Smart Mobile accuses MIMO transmission over both cellular and WiFi.  *Id.* This accused MIMO feature is implemented in chipsets supplied by third parties—Broadcom,

Qualcomm, and, in the past, Intel[1].  *Id.* ¶¶ 15-19.  The Apple employees responsible for implementing those chipsets in Apple's accused products are located in NDCA.  *Id.* ¶¶ 15, 17.

### A.     Defendant Apple

Apple is a California corporation, employing more than 35,000 people who work in or around its headquarters in Cupertino.  Rollins Decl. ¶ 3.  Apple's management and primary research and development facilities are located in Cupertino.  *Id.*  Nearly all of Apple's engineers who work on the design, development, and implementation of the accused features in the accused products are located at Apple's Cupertino headquarters.  *Id.* ¶¶ 9-15, 17.  Similarly, the relevant Apple employees involved in the marketing, licensing, and sales of the accused products work in or near Cupertino.  *Id.* ¶¶ 20-24.

Based on Apple's understanding of Smart Mobile's allegations, the following is a list of the Apple employees likely to be witnesses in this case, and the likely subject matter of their testimony.  The overwhelming majority of these individuals (all but one) and their relevant teammates are located in NDCA:

| <u>Name</u> | <u>Title</u> | <u>Relevance</u> |
|---|---|---|
| Cristoph Paasch | Software Development Engineer | Knowledgeable about the research, design, and development of MPTCP functionality in the accused products.  Mr. Paasch is located in NDCA. |
| Anumita Biswas | Software Development Engineer Manager | Knowledgeable about the research, design, and development of MPTCP implementation in Siri.  Ms. Biswas is located in NDCA. |
| John Eckels | Site Reliability Engineering Manager | Knowledgeable about the research, design, and development of MPTCP implementation in Siri.  Mr. Eckels is located in Seattle, Washington. |

---

[1] In July 2019, Apple acquired relevant portions of Intel's baseband chipset business.  Rollins Decl. ¶ 19.  The Intel personnel who became Apple employees as part of that acquisition were located primarily in California.  *Id.*

| Matt Ball | Software Development Engineer | Knowledgeable about the research, design, and development of MPTCP implementation in Maps.  Mr. Ball is located in NDCA. |
| John Su | Engineering Manager | Knowledgeable about the research, design, and development of MPTCP implementation in Music.  Mr. Su is located in NDCA. |
| Welly Kasten | Software Development Engineer Manager | Knowledgeable about the integration of MIMO functionality over WiFi in Broadcom's chipsets in the accused products.  Mr. Kasten is located in NDCA. |
| Prashant Vashi | Software Engineering Manager | Knowledgeable about the integration of MIMO functionality over cellular in Qualcomm's chipsets in the accused products.  Mr. Vashi is located in NDCA. |
| Wiley Hodges | Product Management Director | Knowledgeable about the marketing of the accused products.  Mr. Hodges is located in NDCA. |
| Jayna Whitt | Principal Counsel | Knowledgeable about licensing of intellectual property, including patent rights, by and to Apple, relating to the Apple accused products.  Ms. Whitt is located in NDCA. |
| Mark Rollins | Finance Manager | Knowledgeable about Apple's sales and financial information concerning the accused products.  Mr. Rollins is located in NDCA. |

Rollins Decl. ¶¶ 9-15, 17.

## B.    Plaintiff Smart Mobile Technologies LLC

According to its Complaint, Smart Mobile is a Delaware limited liability company having a principal place of business in Austin, Texas.  Dkt. No. 1 ¶ 17.  It claims that its business is to "develop[] mobile device software and technologies for scientists and engineers."  *Id.*

Smart Mobile appears to have acquired the asserted patents only eight months before it filed this suit.  Declaration of Michael Jay ("Jay Decl."), Exs. 1-13.  The three inventors of the asserted patents originally assigned the asserted patents to a company called IP Holdings, Inc., which was located in Palo Alto, California.  *Id.*  Then, in July 2015, IP Holdings, Inc. assigned

4

the asserted patents to Smart Mobile, Inc., which was also located in Palo Alto, California. *Id.*
According to the USPTO website, in September 2020, there were additional assignments for
each of the asserted patents from the three inventors and IP Holdings, Inc. to Smart Mobile, Inc.,
which was still listed as being located in Palo Alto. *Id.* Then, two months later, Smart Mobile,
Inc. assigned the asserted patents to Smart Mobile Technologies LLC, the plaintiff in this suit.
*Id.* That is the first time that an entity or person located in Texas appears to have had an
ownership interest in the asserted patents. *Id.*

Although Smart Mobile is purportedly based in Austin, Smart Mobile is unlikely to have
a substantial number of documents or witnesses, if any, located in the District, or any documents
in Waco specifically. There is no indication that the inventors of the asserted patents have any
connection to Smart Mobile or that the conception of the alleged inventions of those patents took
place as part of any work done for, or on behalf of, Smart Mobile. Rather, Smart Mobile merely
acquired the asserted patents many years after they issued, and just shortly before the filing of
this suit. Nor is there any indication that Smart Mobile develops or sells products that embody
any of the claims of the asserted patents.

### C.    Relevant Third Parties

All of the known, relevant third parties are located in California, primarily within NDCA.

#### 1.    The inventors of the asserted patents are all located in NDCA.

The same three individuals are listed as the inventors on all of the asserted patents: Sunil
Rao, Sanjay Rao, and Raman Rao. Their location is identified on the face of the asserted patents
as Palo Alto, California, which is in NDCA. There is no indication in Smart Mobile's Complaint
that these inventors are no longer located in NDCA. And based on Apple's investigation to date,
it has no reason to believe that these inventors are no longer at this location.

## 2. Broadcom and Qualcomm Witnesses are in California, not Texas

The third parties that developed the accused MIMO functionality in the accused products are all located in California. For instance, the accused features in the Broadcom chipsets used in Apple's accused products were designed and developed by Broadcom. *Id.* ¶ 16. Apple was not and is not involved in the design or development of these chipsets, and does not have access to the source code for the accused MIMO functionality. *Id.* The Apple team—which is located entirely in NDCA—works to integrate Broadcom's MIMO functionality and code onto Apple's devices. *Id.* ¶ 15. Based on Apple's current investigation, the relevant Broadcom engineers are located in NDCA, and none are located in Texas. *Id.* ¶ 16.

The same is true for Qualcomm. The accused MIMO feature in the Qualcomm baseband chipsets were designed and developed by Qualcomm. Apple has never been involved in the design or development of these chipsets, and does not have access to any relevant Qualcomm source code for any Apple accused product released after the iPhone X. *Id.* ¶ 18. Based on Apple's current investigation, the relevant Qualcomm engineers are located in California, and none are located in Texas. *Id.* And the Apple team responsible for integrating Qualcomm's MIMO functionality and code into Apple's devices are located in NDCA. *Id.* ¶ 17.

## III. LEGAL STANDARD

Under section 1404(a), the moving party must first show that the claims "might have been brought" in the proposed transferee district. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-13 (5th Cir. 2008) ("*Volkswagen II*"). Second, the movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district. *Volkswagen II* at 315. As shown below, that is true here.

In evaluating convenience, the district court weighs both private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private

factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.*  The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*  The proposed transferee forum is "clearly more convenient" where, as here, most potential witnesses and relevant evidence are concentrated in the transferee district. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009).  The moving party can make the "clearly more convenient" showing even when "the facts here may not show that the California court is far more convenient." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *2 (Fed. Cir. 2018).

The convenience of the witnesses is the most important factor in the transfer analysis. *In re Apple Inc.*, No. 2020-127, 2020 WL 3249953, at *2 (Fed. Cir. 2020); *In re Genentech, Inc.* 566 F.3d 1338, 1343 (Fed. Cir. 2009); *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:15-cv-00091, 2016 WL 6909479, at *7 (W.D. Tex. Jan. 28, 2016).  Moreover, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *see also In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).

## IV.   NDCA IS CLEARLY THE MORE CONVENIENT VENUE FOR THIS CASE.

### A.   This Case Could Have Been Brought In NDCA.

As any patent suit may be brought in "the judicial district where the defendant resides," 28 U.S.C. § 1400(b), and Apple is headquartered in Cupertino, California, within NDCA (*see* Rollins Decl. ¶ 3), venue would be proper in NDCA.

### B.   The Private Interest Factors Favor Transfer to NDCA.

The private interest factors strongly favor transfer to NDCA because the overwhelming majority of the witnesses and evidence in this case are located there.

#### 1.   The sources of proof are in California, not Texas.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d at 1345. "In determining the ease of access to sources of proof, the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017); *Uniloc USA Inc. v. Box, Inc.*, No. 1:17-CV-754-LY, 2018 WL 2729202, at *3 (W.D. Tex. June 6, 2018) ("It would be more inconvenient for Box to litigate in [WDTX] than for Uniloc to litigate in Northern California"); *Collaborative Agreements, LLC. v. Adobe Sys. Inc.,* No. 1-14-CV-356, 2015 WL10818739 *4 (W.D. Tex. Aug. 21, 2015).  That some documents may be accessible in this District, such as via shared network drives, does not weigh against transfer where, as here, the documents themselves are located in NDCA.  *Koss Corp. v. Plantronics, Inc.*, No. 6:20-CV-00663-ADA, 2021 WL 2075685, at *3 (W.D. Tex. May 20, 2021) ("Fifth Circuit precedent makes clear that this factor speaks to the *physical location* of documents; it does not concern the locations from which such documents are accessible.") (emphasis in original).

8

All of the research, design, development, and implementation of the accused features at Apple has taken place at Apple's Cupertino headquarters.  Rollins Decl. ¶¶ 9-18.  The key Apple documents relating to the research, design, development, implementation, and operation of the accused features were generated in NDCA, and the relevant Apple source code associated with the accused features was developed and tested in NDCA.  *Id*. ¶ 9.  In addition, Apple's documents concerning the marketing, sales and financial information for the accused products are all located in or around Cupertino, California.  *Id.* ¶¶ 20, 24.  The same is true of Apple's licensing documents.  *Id.* ¶ 20.  As such, the overwhelming majority of the sources of proof regarding the accused features and the accused products are in NDCA.  In addition, documents, including source code, from third parties Qualcomm and Broadcom are likely located in California, and in NDCA in particular.  This weighs in favor of transfer to NDCA as well.  *Koss Corp.*, 2021 WL 2075685, at *3 ("[Movant]'s showing that additional, third-party documents— Apple's documents—are located in NDCA further tips the scales in favor of transfer.").

Conversely, there are very few sources of proof, if any, in this District.  <u>First</u>, none of Apple's employees with any knowledge relevant to this case are based in this District.  <u>Second</u>, Apple is not aware of any potential third-party witnesses who reside in this District.  <u>Third</u>, the purported inventions of the asserted patents were not developed in this District, or as part of Smart Mobile's business, and there is no indication that Smart Mobile practices any of the asserted patents, so there is not likely to be significant sources of proof in this District from Smart Mobile even though Smart Mobile purportedly has a place of business in Austin.  And in any event, no such sources of proof from Smart Mobile, even if they did exist, would be in Waco.  Given that there are numerous sources of proof in NDCA and very few, if any, in this District, and none in Waco, this factor clearly favors transfer.

**2.      Key third parties are subject to compulsory process in NDCA.**

The "fact that the transferee venue is a venue with usable subpoena power ... weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x. 886, 889 (Fed. Cir. 2014); *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009).

A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person … is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). And the ability to compel live trial testimony is important for evaluating a witness' testimony. *See Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

Here, relevant third-party witnesses are located in NDCA, and none are known to be in this District or in the Waco Division. Thus, this factor strongly favors transfer to NDCA. Courts in NDCA can compel the attendance at trial of the three inventors of the asserted patents, as well as many engineers from Qualcomm and Broadcom who developed the accused MIMO functionality in the accused products. Rollins Decl. ¶ 16, 18. The fact that Apple does not yet know whether these third-party witnesses will testify at trial without a subpoena does not affect the transfer analysis. *See In re Juniper Networks*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) (Fed. Cir. 2021) ("That no party expressly identified any witness as unwilling to testify, however, does not cut in favor of conducting this litigation in the Western District of Texas rather than in the Northern District of California.").

### 3.   The attendance of willing witnesses strongly favors transfer.

"The convenience of the witnesses is probably the single most important factor" in the transfer analysis. *Genentech*, 566 F.3d at 1343. To assess this factor, the Fifth Circuit applies the "100 mile rule," which provides that the venue with the shorter average distance for witnesses to travel is favored when two potential venues are more than 100 miles apart. *Volkswagen I*, 371 F.3d at 205. NDCA is approximately 1,700 miles from Waco, Texas, so the relevant inquiry in comparing the venues is how far the witnesses would be required to travel.

As described above in Section II.A., nine of the likely Apple witnesses are based in NDCA (the only other likely Apple witness is in Seattle, Washington). *See* Rollins Decl. ¶¶ 9-15, 17, 19-24. None of these employees work in Texas or work with anyone in Texas. These witnesses are all a short car ride from the courthouse in NDCA (*e.g.*, 15 minutes from San Jose), but more than 1,700 miles from Waco, Texas, with very few direct flights available. Jay Decl., Exs. 14, 15. Thus, the Apple witnesses would face significantly greater travel time, distance, and expense if required to attend trial in Waco, Texas. This travel burden is not insignificant and has been cited as a key reason why transfer is often appropriate. *See Volkswagen II*, 545 F.3d at 317 ("Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family and community."); *see also In re Acer America Corp.*, 626 F.3d 1252, 1255 (2010) (noting that in requiring party employees to travel for trial the parties would likely incur significant expenses for airfare, meals, lodging, as well as losses in productivity).

The convenience of those Apple employee witnesses cannot be discounted merely because they are employees of a party. *See Juniper Networks*, 14 F.4th at 1319 ("We have previously rejected the district court's reliance on the proposition that the convenience-to-the-witnesses factor is attenuated when the witnesses are employees of the party calling them."). And although Apple does have facilities in Austin and retail stores in Texas, no known witnesses

11

work in those offices or retail stores, and none of the accused products or features were developed in Texas.  Rollins Decl. ¶¶ 9-19, 25.  Litigants previously have pointed to these irrelevant Apple facilities in attempting to resist transfer to California, and Smart Mobile may do so here.  But that argument is meritless where none of the relevant witnesses work in those facilities.  *See Uniloc USA, Inc. v. Apple Inc.*, No. A-18-CY-990-LY, 2019 WL 2066121, *3 (W.D. Tex. Apr. 8, 2019); *Peak Completion Techs., Inc. v. I-TEC Well Solutions, LLC*, No. A-13-cv-086-LY, 2013 WL 12121002 at *3 (W.D. Tex. June 26, 2013).

Similarly, the fact that Smart Mobile has a place of business in this District does not change that this factor strongly favors transfer.  Smart Mobile acquired the asserted patents years after they issued and only eight months before it filed this suit.  Prior to that, the asserted patents were assigned to different entities, all located in NDCA.  Jay Decl., Ex. 1-13.  And the three inventors listed on the asserted patents were likewise located in NDCA.  *Id.*  Moreover, Smart Mobile does not appear to have any practicing products.  As such, it is highly unlikely that Smart Mobile would have more than one or two potential witnesses.  Even if those witnesses are located in this District, in situations like this, where the vast majority of likely witnesses are in the *transferee* district, this factor favors transfer.  *See HP*, 2018 WL 4692486, at *3;  *Genentech*, 566 F.3d at 1343; *Via Vadis, LLC v. Netgear, Inc.*, No. 14-cv-809, 2015 WL 10818675, at *2 (W.D. Tex. July 30, 2015); *Datascape, Ltd. v. Dell Techs., Inc.*, No. 6:19-cv-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019); *Infogation*, No. 6:20-cv-00366-ADA, slip op. at 8 ("The majority of both party and non-party witnesses will be located either within the SDCA or in the state of California and the cost of attendance for these witnesses will be less if the case is tried in the SDCA than if it were tried in WDTX.  Accordingly, this factor weighs in favor of transfer.").

**4.    The "all other practical problems" factor is neutral or slightly favors transfer.**

The final private interest factor, "all other practical problems that make trial of a case easy, expeditious and inexpensive," is either neutral or slightly favors transfer here.  This case is in its early stages, with no discovery having been conducted and no claim construction schedule or trial date having yet been set.  And although there is a related action against Samsung in this District filed roughly at the same time as this case,[2] the mere fact of co-pending litigation alone does not weigh against transfer.  *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021) ("[W]hile we recognize that judicial economy can serve important ends in a transfer analysis, we have rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor.") (citations omitted); *In re Samsung Elecs. Co., 2 F.4th 1371, 1379-80 (Fed. Cir. 2021).* "To hold otherwise, [the Court] would be effectively inoculating a plaintiff against convenience transfer under § 1404(a) simply because it filed related suits against multiple defendants in the transferor district.  This is not the law under the Fifth Circuit."  *In re Google Inc.*, 2017 WL 977038, at *3.

**C.    The Public Interest Factors Favor Transfer To NDCA.**

The public interest factors are all either neutral or favor transfer to NDCA.

**1.    There are no administrative difficulties stemming from court congestion that weigh against transfer to NDCA.**

"Th[is] factor concerns whether there is an appreciable difference in docket congestion between the two forums."  *In re Adobe, Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020).  The

---

[2] *Smart Mobile Technologies LLC v. Samsung Electronics Co. Ltd. et al.*, No. 6:21-cv-00701-ADA.

Federal Circuit recently noted that "the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *Juniper Networks*, 14 F.4th at 1322.  Absent a notable difference in congestion between the two districts, this factor is neutral, even if this District's proposed schedule would attempt to resolve the case at a faster pace.  *See Juniper Networks*, 14 F.4th at 1322 ("[W]e have held that it is improper to assess the court congestion factor based on the fact that the Western District of Texas has employed an aggressive scheduling order"); *Adobe*, 823 F. App'x at 932 ("Nothing about the court's general ability to set a schedule directly speaks to that issue.").  And the ability of this Court to resolve the case more quickly is not sufficient to deny transfer "with several factors favoring transfer and nothing else favoring retaining this case in Western Texas."  *Juniper Networks*, 14 F.4th at 1322; *Genentech*, 566 F.3d at 1347 (when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors.").  Thus, this factor is neutral.

### 2.    The local interest factor strongly favors transfer to NDCA.

The local interest factor takes into account the preference to have localized interests decided at home.  *Volkswagen I*, 371 F.3d at 206.  This factor addresses the "factual connection" a case has with the transferee and transferor venues.  *See id; see also Juniper Networks*, 14 F.4th 1320 (this factor "regards the significant connections between a particular venue and *the events that gave rise to a suit*") (emphasis in original).  The Fifth Circuit instructs that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206.  The present case has a far greater factual connection to NDCA than to this District, making it more proper that the case be decided by a locally interested California jury than a jury of Texans with no local connection to the community in which the allegedly infringing products originated.

14

The accused features were designed and developed entirely in California, primarily in NDCA.  Rollins Decl. ¶¶ 9-19.  Thus, NDCA has the greatest local interest in the resolution of this case.  Where, as here, the accused features were developed predominantly in NDCA, and because this suit "calls into question the work and reputation of several individuals residing" in that district, NDCA's interest in this matter is "self-evident."  *See Hoffman-La Roche,* 587 F.3d at 1336; *DataQuill, Ltd. v. Apple Inc.*, No. 13-ca-706, 2014 WL 2722201, at *4 (W.D. Tex. June 13, 2014) (local interest favored transfer notwithstanding Apple's Austin presence because "this case is about Apple's actions in designing and developing the iPhone and some of its software products, all of which happened in Cupertino").

Although Apple does have a presence in Austin, the likely Apple witnesses are located almost entirely in NDCA, not in Texas.  Rollins Decl. ¶¶ 9-25.  The Federal Circuit has repeatedly rejected that a party's "general presence in a particular district" can alone "give that district a special interest in the case."  *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021); *see also Juniper*, 14 F.4th at 1320.  Rather, "what is required is that there be 'significant connections between a particular venue and the events that gave rise to a suit.'"  *Google*, 2021 WL 4592280, at *5.  Because only NDCA has significant connections to the events that gave rise to this suit, the local interest factor weighs strongly in favor of transfer.

### 3. Familiarity with the governing law and conflicts of law are neutral.

The last two public interest factors are neutral—there are no perceived conflicts of law, and both districts are equally qualified to apply patent law.  *In re TS Tech.*, 551 F.3d 1315, at 1320-21 (Fed. Cir. 2008).

## V. CONCLUSION

For all of the reasons set forth above, Apple respectfully requests that the Court transfer this case to NDCA because it is the clearly more convenient venue.

Dated:  February 11, 2022                    Respectfully submitted,

_/s/ John M. Guaragna_
John M. Guaragna
Texas Bar No 24043308
DLA PIPER LLP (US)
401 Congress Avenue, Suite 2500
Austin, TX  78701-3799
Tel: 512.457.7125
Fax: 512.457.7001
john.guaragna@us.dlapiper.com

Mark D. Fowler (_pro hac vice_)
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, California 94303-2250
Tel: 650.833.2000
Fax: 650.833.2001
mark.fowler@us.dlapiper.com

Tiffany C. Miller (_pro hac vice_)
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  619.699.2700
Fax:  619.699.2701
tiffany.miller@us.dlapiper.com

Michael D. Jay (_pro hac vice_)
Nandan R. Padmanabhan (_pro hac vice_)
Martin M. Ellison (_pro hac vice_)
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA  90067
Tel:  310.595.3000
Fax:  310.595.3300
michael.jay@us.dlapiper.com
nandan.padmanabhan@us.dlapiper.com
martin.ellison@us.dlapiper.com

Joel Chao-lee Lin (_pro hac vice_)
DLA PIPER LLP (US)

16

1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Tel:  212.335.4500
Fax:  212.335.4501
joel.lin@us.dlapiper.com

ATTORNEYS FOR DEFENDANT
APPLE INC.

### CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), counsel for Apple has conferred with counsel for Smart Mobile in a good-faith effort to resolve the matter presented herein.  Counsel for Smart Mobile opposes the instant Motion.

*/s/ John M. Guaragna*
John M. Guaragna

### CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically on February 11, 2022, pursuant to Local Rule CV-5(a) and has been served on all counsel whom have consented to electronic service via electronic mail.  Any other counsel of record will be served by first class U.S. mail on this same date.

*/s/ John M. Guaragna*
John M. Guaragna

18