UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SMART MOBILE TECHNOLOGIES LLC, LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>　　　　Defendant. | Case No. 6:21-cv-00603-ADA<br><br>**JURY TRIAL DEMANDED** |

# DECLARATION OF MARK ROLLINS IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

I, Mark Rollins, hereby declare and state as follows:

1. I am over 18 years of age and competent to make this declaration. I am employed as a Finance Manager at Apple Inc. ("Apple") and my primary place of work is Cupertino, California. I have been employed by Apple since 2019.

2. I provide this declaration in support of Apple's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) filed in the above-captioned case. Unless otherwise indicated below, the statements in this declaration are based upon my personal knowledge, my review of corporate records maintained by Apple in the ordinary course of business, and/or my discussions with Apple employees. If called to testify as a witness in this matter, I could and would testify competently and truthfully to each of the statements in this declaration under oath.

3. Apple is a California corporation and was founded in 1976. Apple is a global business headquartered in Cupertino, California, which is in the Northern District of California ("NDCA"). I understand that NDCA includes the following counties: Alameda, Contra Costa,

Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, San Francisco, San Mateo, Santa Clara, Santa Cruz, and Sonoma. Apple's management and primary research and development facilities are located in or near Cupertino, including surrounding cities such as Sunnyvale, all of which are located in NDCA. The primary operation, marketing, sales, and finance decisions for Apple also occur in or near Cupertino. As of February 2022, Apple has more than 35,000 employees who work in or near its Cupertino headquarters.

4. I understand that Smart Mobile Technologies, LLC ("Smart Mobile") filed the above-captioned patent infringement lawsuit against Apple in the United States District Court for the Western District of Texas. In its Complaint for Patent Infringement filed on June 11, 2021 ("the Complaint"), Smart Mobile alleges infringement of U.S. Patent No. 8,442,501 (the "'501 patent"), U.S. Patent No. 8,472,936 (the "'936 patent"), U.S. Patent No. 8,472,937 (the "'937 patent"), U.S. Patent No. 8,761,739 (the "'739 patent"), U.S. Patent No. 8,824,434 (the "'434 patent"), U.S. Patent No. 8,842,653 (the "'653 patent"), U.S. Patent No. 8,982,863 (the "'863 patent"), U.S. Patent No. 9,019,946 (the "'946 patent"), U.S. Patent No. 9,049,119 (the "'119 patent"), U.S. Patent No. 9,191,083 (the "'083 patent"), U.S. Patent No. 9,319,075 (the "'075 patent"), U.S. Patent No. 9,614,943 (the "'943 patent"), and U.S. Patent No. 9,756,168 (the "'168 patent") (collectively, the "asserted patents"). Dkt. 1 ("Compl.") ¶¶ 2-15.

5. Based on the Complaint, I understand that Plaintiff has identified the following products as infringing the asserted patents: Apple's iPhone models iPhone 4s, 5, 5c, 5s, 6, 6 Plus, SE (1st gen), 6s, 6s Plus, 7, 7 Plus, 8, 8 Plus, X, XR, XS, XS Max, 11, 11 Pro, 11 Pro Max, SE (2nd Gen), 12, 12 mini, 12 Pro, and 12 Pro Max; Apple's iPad models iPad 2, iPad (3rd Gen.), iPad (4th Gen.), iPad (5th gen), iPad (6th gen), iPad (7th gen), iPad Air, iPad Air 2, iPad Air (3rd Gen.), iPad Air (4th Gen.), iPad Mini (1st Gen), iPad Mini 2, iPad Mini 3, iPad

Mini 4, iPad Mini (5th gen), iPad Pro 12.9", iPad Pro 9.7", iPad Pro (2nd gen), and iPad Pro (3rd gen), iPad Pro (4th gen); Apple Watch Series 3 and Series 4; Apple TV HD, and TV 4K (collectively, the "accused products")."  Compl. ¶¶ 48, 67, 87, 107, 127, 145, 177, 191, 219, 243, 262, 274, and 285.

6. Based on Smart Mobile's Complaint, I understand that the '501, '936, '937, '739, '119, and '168 patents generally relate to "wireless communications systems and devices having voice and data communication capability, the capability to switch dynamically between wireless networks, and the capability of communicating with a server that enhances the functionality of the devices."  Compl. ¶ 24.  I also understand from the Complaint that the '434, '653, '863, '946, '083, '075, and '943 patents generally relate to "enhancements to mobile device communications functionality," teaching "among other things, that by using transmit and receive units, coupled with one or more processors configured to process multiple signal or data streams in parallel, transmission bottlenecks could be mitigated and enhanced transmission capabilities – such as the ability to multiplex signal streams or access multiple signal streams simultaneously or sequentially – could be achieved."  Compl. ¶ 25.

7. For purposes of Apple's motion to transfer, I understand that Smart Mobile has generally accused two different functionalities in the accused products.  The first is multipath TCP ("MPTCP"), which I understand generally is the ability to communicate with a network—receiving and transmitting data—using both cellular and WiFi, either at the same time or switching between the two.  Compl. ¶ 39-44.  Smart Mobile contends that this accused functionality is made available to, and used by, various applications.  *Id.*

8. The second of the features that Smart Mobile accuses is what it refers to as "'Multiple Input Multiple Output' (MIMO)" functionality.  Compl. ¶¶ 45, 46.  My general

3

understanding is that this is a method for multiplying the capacity of a radio link using multiple transmission and receiving antennas for transmitting and receiving data. Smart Mobile accuses MIMO transmission over both cellular and WiFi. *Id.* I understand that, to the extent the MIMO feature identified in the Complaint are implemented in any accused products, they would be implemented in the cellular and/or WiFi chipsets supplied by third parties—Broadcom, Qualcomm, and, in the past, Intel.

9. As set forth below, and based on our current investigation to date, I understand that nearly all of Apple's United States-based engineers who participated in or are knowledgeable about the research, design, and development of the accused features have a primary place of work in NDCA. Based on our current investigation to date, I am not aware of any Apple employees located in Texas who have worked or currently work on the research, design, or development of the accused features. I understand that working files and electronic documents concerning the accused features reside on local computers and/or servers either located in or around NDCA or which are accessible in NDCA. To my knowledge, Apple does not have any working files or documents relevant to this case located in Texas. I further understand, based on our current investigation to date, that the relevant source code associated with the accused features was developed and tested in California. I understand that access to this source code is controlled on a need-to-know basis, and that the source code can be accessed by Apple employees working on the accused features in NDCA. I am not aware of any relevant source code relating to the accused products that was developed, coded or tested in Texas.

10. Cristoph Paasch is a Software Development Engineer within the Internet Technologies group at Apple. Mr. Paasch's primary workplace is in the Santa Clara Valley area, California. Mr. Paasch and his team are responsible for the research, design, and

development of the accused MPTCP feature in the Apple accused products. Mr. Paasch confirmed that the research, design, and development of the MPTCP feature occurred in the Santa Clara Valley area, California. Mr. Paasch further confirmed that all of the Apple employees who work on the MPTCP feature have a primary workplace in the Santa Clara Valley area, California. Neither Mr. Paasch nor any employee on his team who work on the MPTCP feature is located in Texas. Mr. Paasch confirmed that neither he nor any of his team members works with any individuals located in Texas in connection with their work on this accused feature.

11. Anumita Biswas is a Software Development Engineer Manager within the Home group at Apple. Ms. Biswas's primary workplace is in the Santa Clara Valley area. Prior to her current role, Ms. Biswas was a Software Engineer in that group. In that prior role, Ms. Biswas and her team were responsible for the implementation of the MPTCP feature in Siri in the Apple accused products. Ms. Biswas confirmed that the research, design, and development relating to the implementation of the MPTCP feature in Siri occurred in the Santa Clara Valley area. Ms. Biswas confirmed that neither she nor any of her prior team members worked with any individuals located in Texas in connection with their work on this accused feature.

12. John Eckels is a Site Reliability Engineering Manager within the Production Engineering group at Apple. Mr. Eckels' primary workplace is in Seattle, Washington. Mr. Eckels and his team are responsible for the implementation of the MPTCP feature in Siri in the Apple accused products. Mr. Eckels confirmed that the work relating to the implementation of the MPTCP feature in Siri occurred in the Santa Clara Valley area. Mr. Eckels further confirmed that the majority of the Apple employees who work on the implementation of the MPTCP feature in Siri have a primary workplace in the Santa Clara Valley area, with the

exception of one employee located in the Portland area and three located in the Seattle area. Neither Mr. Eckels nor any employee on his team who works on the implementation of the MPTCP feature in Siri is located in Texas.  Mr. Eckels confirmed that neither he nor any of his team members works with any individuals located in Texas in connection with their work on this accused feature.

        13. Matt Ball is a Software Development Engineer within the Maps Client group at Apple.  Mr. Ball's primary workplace is in the Santa Clara Valley area.  Mr. Ball and his team are responsible for the research, design, and development relating to the Maps application in the Apple accused products.  Mr. Ball confirmed that the research, design, and development relating to the Maps application occurred in the Santa Clara Valley area.  Mr. Ball further confirmed that the Maps application does not implement MPTCP functionality and that the Apple employees knowledgeable about this fact have a primary workplace in the Santa Clara Valley area.  Neither Mr. Ball nor any employee on his team is located in Texas.  Mr. Ball confirmed that neither he nor any of his team members works with any individuals located in Texas in connection with their work on the Maps application.

        14. John Su is an Engineering Manager within the Interactive Media group at Apple.  Mr. Su's primary workplace is in the Santa Clara Valley area.  Mr. Su and his team are responsible for the implementation of the MPTCP feature in Music in the Apple accused products.  Mr. Su confirmed that the work relating to the implementation of the MPTCP feature in Music occurred in the Santa Clara Valley area.  Mr. Su further confirmed that all of the Apple employees who currently work on the implementation of the MPTCP feature in Music have a primary workplace in the Santa Clara Valley area.  Neither Mr. Su nor any employee on his team who works on the implementation of the MPTCP feature in Music is located in Texas.

Mr. Su confirmed that neither he nor any of his team members works with any individuals located in Texas in connection with their work on this accused feature.

15. Welly Kasten is a Software Development Engineer Manager in the Core WiFi group at Apple. Mr. Kasten and his team are responsible for managing the Broadcom WiFi chipsets that implement the accused MIMO over WiFi feature. Mr. Kasten confirmed that the work of managing and implementing the Broadcom chipsets in the Apple accused products occurred in the Santa Clara Valley area. Mr. Kasten further confirmed that all of the Apple employees who currently work on managing and implementing the Broadcom chipsets in the Apple accused products have a primary workplace in the Santa Clara Valley area. Neither Mr. Kasten nor any employee on his team who works on managing and implementing the Broadcom chipsets in the Apple accused products is located in Texas. Mr. Kasten confirmed that neither he nor any of his team members works with any individuals located in Texas in connection with their work on managing and implementing the Broadcom baseband chipsets in the Apple accused products.

16. Mr. Kasten confirmed that the accused MIMO feature in the Broadcom chipsets was designed and developed by Broadcom. He further confirmed that Apple has never been involved in the design or development of these chipsets. I also understand that, to Mr. Kasten's knowledge, Mr. Kasten and his team communicate with Broadcom employees located in California (and none in Texas) as it relates to the accused Broadcom chipsets.

17. Prashant Vashi is a Software Engineering Manager in the Wireless Technologies and Ecosystems group at Apple. Mr. Vashi and his team are responsible for managing the Qualcomm baseband chipsets that implement the accused MIMO over cellular feature. Mr. Vashi confirmed that the work of managing and implementing the Qualcomm baseband chipsets

7

in the Apple accused products occurred in the Santa Clara Valley area, California. Mr. Vashi further confirmed that the Apple employees who currently work on managing and implementing the Qualcomm baseband chipsets in the Apple accused products have a primary workplace in the Santa Clara Valley area, with the exception of one such employee who is located in San Diego, California. Neither Mr. Vashi nor any employee on his team who works on managing and implementing the Qualcomm baseband chipsets in the Apple accused products is located in Texas. Mr. Vashi confirmed that neither he nor any of his team members works with any individuals located in Texas in connection with their work on managing and implementing the Qualcomm baseband chipsets in the Apple accused products.

18. Mr. Vashi confirmed that the accused MIMO feature in the Qualcomm baseband chipsets was designed and developed by Qualcomm. He further confirmed that Apple has never been involved in the design or development of these chipsets, and does not have access to any relevant Qualcomm source code for any Apple accused product released after the iPhone X. I also understand that, to Mr. Vashi's knowledge, Mr. Vashi and his team communicate with Qualcomm employees located in California (and none in Texas) as it relates to the accused Qualcomm baseband chipsets.

19. It is my understanding that certain of the accused products contained baseband chipsets that were supplied by Intel. It is also my understanding that Apple acquired relevant portions of Intel's baseband chipset business in July 2019 and that the Intel personnel who became Apple employees as part of that acquisition were located primarily in California.

20. As set forth below, I understand that nearly all Apple employees who have knowledge relevant to marketing, licensing, and finances associated with the accused products work in or near the Santa Clara Valley area. I am not aware of any Apple employee who has

information relevant to this case and is located in Texas.  To the best of my knowledge, related working files, electronic documents, and business records reside on local computers and/or servers either located in or around the Santa Clara Valley area or accessible in the Santa Clara Valley area.  I am not aware of any Apple working files or documents located in Texas that are relevant to this case.

21. The Apple employees whom Apple expects will be witnesses and who have knowledge relevant to marketing, licensing, or financials are myself, Wiley Hodges, and Jayna Whitt.  As described below, all of these individuals—including myself—have a primary workplace in the Santa Clara Valley area.  I am not aware of any anticipated witnesses of Apple located in Texas.

22. Wiley Hodges is a Product Management Director in the OS Product Marketing group at Apple.  Mr. Hodges's primary workplace is in the Santa Clara Valley area, California.  Mr. Hodges and his team are responsible for inbound product management and outbound product marketing efforts relating to certain core software technologies and developer tools of the Apple accused products.  Mr. Hodges confirmed that the primary place of work for employees on his team is in the Santa Clara Valley area.  Neither Mr. Hodges nor any employee on his team is located in Texas.  Mr. Hodges confirmed that neither he nor any of his team members work with any individuals located in Texas in connection with their work on the Apple accused products.

23. Jayna Whitt is a Principal Counsel in the IP Transactions group at Apple.  Ms. Whitt's primary workplace is in the Santa Clara Valley area, California.  Ms. Whitt and her team are responsible for intellectual property licensing at Apple.  Ms. Whitt confirmed that she is knowledgeable about licensing of intellectual property, including patent rights, by and to

Apple, relating to the Apple accused products.  Ms. Whitt also confirmed that the primary place of work for employees on her team is in the Santa Clara Valley area, California, with the exception of two individuals (both based remotely in Colorado).  Neither Ms. Whitt nor any employee on her team is located in Texas.  Ms. Whitt also confirmed that no IP Transactions team member works with any Apple employees located in Texas with respect to patent licensing for Apple.

24. I am knowledgeable about Apple's sales and financial information concerning the accused products.  My primary workplace is in the Santa Clara Valley area, California.  The primary place of work of employees on my team is the Santa Clara Valley area, California.  Documents concerning sales and financial information for these products reside on local computers and/or servers either located in or around the Santa Clara Valley area, California, or accessible in the Santa Clara Valley area.  Neither I nor any employee on my team is located in Texas.  None of my team members work with any individuals located in Texas with respect to financials relevant to the accused products in this matter.

25. As of the date of this declaration, Apple operates over 270 retail stores in the United States, more than 50 of which are in California, including 19 stores in the NDCA.  In WDTX, Apple has two retail stores in Austin, two retail stores in San Antonio, and one store in El Paso.  I am not aware of any retail employee in these retail stores who was ever involved in the research, design, development, or marketing of the accused features.  To the extent that any of the accused products are sold in the WDTX, they are and were sold nationwide, and are not offered in any manner or degree differently than they are offered elsewhere.  Apple has non-retail offices in Austin and Lockhart, Texas (located in the WDTX).  To the best of my

knowledge, however, none of the Apple employees with relevant information relating to the accused features work at these offices or reside in Texas.

26. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this declaration was executed this 10th day of February 2022, in Cupertino, California.

_____
Mark Rollins