**REDACTED PUBLIC VERSION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SMART MOBILE TECHNOLOGIES LLC, | Case No. 6:21-cv-00603-ADA |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| APPLE INC., | |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR TRANSFER UNDER 1404(a)**

**REDACTED PUBLIC VERSION**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ....................................................................................................... 1

    A.    The Private Interest Factors ................................................................... 2

        1.    The "Relative Ease Of Access To Sources Of Proof" Factor Is Neutral And Does Not Favor Transfer........................................ 2

        2.    The "Availability Of Compulsory Process To Secure The Attendance Of Witnesses" Factor Disfavors Transfer to NDCA. .............. 4

        3.    The "Cost Of Attendance For Willing Witnesses" Factor Is Neutral Or Only Slightly Favors Transfer. ............................................ 7

        4.    The "Other Practical Problems That Make Trial Of A Case Easy, Expeditious And Inexpensive" Factor Disfavors Transfer Or Is Neutral........................................................................... 9

    B.    The Public Interest Factors ................................................................... 10

        1.    The "Administrative Difficulties Flowing From Court Congestion" Factor Disfavors Transfer. ........................................ 10

        2.    The "Local Interest In Having Localized Interests Decided At Home" Factor Is Neutral and Does Not Favor Transfer. .......................... 11

        3.    The "Familiarity Of The Forum With The Law That Will Govern The Case" Factor Is Neutral and Does Not Favor Transfer..................... 15

        4.    The "Avoidance Of Unnecessary Problems Of Conflict Of Laws" Factor Is Neutral And Does Not Favor Transfer. .................................... 15

III.    CONCLUSION.................................................................................................... 15

REDACTED PUBLIC VERSION

## **TABLE OF AUTHORITIES**

**Cases**

*10Tales, Inc. v. TikTok Inc.*,
   6:20-CV-00810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021)....................................... 3

*Action Indus., Inc. v. US. Fid. & Guar. Co.*,
   358 F.3d 337 (5th Cir. 2004)................................................................................................. 1

*Bel Power Sol'ns Inc. v. Monolithic Power Sys., Inc.*,
   6:21-cv-655-ADA, 2022 WL 2161056 (W.D. Tex. June 15, 2022) ........................................ 3

*Defense Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022)......................................................................................... 1, 12, 14

*Donoghue v. Orange County*,
   848 F.2d 926 (9th Cir. 1987)............................................................................................... 6

*Ethicon Endo-Surgery, Inc. v. Covidien LP*,
   826 F.3d 1366 (Fed. Cir. 2016)........................................................................................... 11

*Fintiv Inc. v. Apple Inc.*,
   6:18-cv-00372, 2019 WL 4743678 (W.D. Tex. Sept. 10, 2019)........................................ 2, 4

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010)........................................................................................... 12

*In re DISH Network LLC*,
   2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)) ...................................................... 5

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)....................................................................................... 7, 10

*In re General Motors Co.*,
   2023-105, 2023 WL 355108 (Fed. Cir. Jan. 23, 2023) ...................................................... 2, 4

*In re Google LLC*,
   --- 4th ---, 2023 WL 1425780 (Fed. Cir. Feb. 1, 2022) ...................................................... 10

*In re Google, LLC*,
   2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ...................................................... 8

*In re Pandora Media, LLC*,
   2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021)....................................................... 8

*In re Planned Parenthood Fed. Of Am. Inc.*,
   52 F.4th 625 (5th Cir. 2022)......................................................................................... 2, 4, 10

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010)........................................................................................... 9

**REDACTED PUBLIC VERSION**

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) .................................................................................. 1, 2

*In re Volkswagen, Inc.*,
545 F.3d 304 (5th Cir. 2008) ........................................................................ 1, 4, 9, 11

*Issagholi v. McLaren Automotive, Inc.*,
19-cv-07616, 2021 WL 43552297 (C.D. Cal. Jul. 9, 2021) ...................................... 6

*Jawbone Innovations, LLC v. Google LLC*,
21-cv-00985-ADA, 2022 WL 12078627 (W.D. Tex. Oct. 20, 2022) ........................ 14

*Kahn v. Gen. Motors Corp.*,
889 F.2d 1078 (Fed. Cir. 1989) ............................................................................. 11

*Koss Corp. v. Plantronics, Inc.*,
6:20-CV-00663-ADA, 2021 WL 2075685 (W.D. Tex. May 20, 2021) ...................... 2

*Lynk Labs, Inc. v. Home Depot USA, Inc.*,
6:21-CV-00097, 2022 WL 1593366 (W.D. Tex. May 19, 2022) ............................ 14

*Parkervision, Inc. v. Intel Corp.*,
6:20-CV-00108, 2021 WL 401989 (W.D. Tex. Jan. 26, 2021) ............................... 10

*Parsons v. Chesapeake & Ohio Ry. Co.*,
375 U.S. 71 (1963) ................................................................................................ 10

*PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*,
6:11-cv-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ................................... 9

*Seagen Inc. v. Daiichi Sankyo Co.*,
2:20-CV-00337-JRG, 2021 WL 3620428 (E.D. Tex. Apr. 19, 2021) ...................... 14

*Unification Techs. LLC v. Micron Tech., Inc.*,
6:20-CV-500-ADA, 2022 WL 92809 (W.D. Tex. Jan. 10, 2022) ........................... 14

*Viasat, Inc. v. Western Digital Techs., Inc.*,
21-cv-01230-ADA, 2022 WL 17815126 (W.D. Tex. Dec. 12, 2022) ....................... 9

*Word to Info, Inc. v. Facebook, Inc.*,
3:14-cv-04387-K, 2015 WL 13870507 (N.D. Tex. Jul. 23, 2015) ........................... 12

REDACTED PUBLIC VERSION

## I.    INTRODUCTION

The Court should deny Apple Inc.'s ("Apple") motion to transfer this case to the Northern District of California ("NDCA") pursuant to 35 U.S.C. § 1404(a). Apple has not carried its burden of showing that NDCA is a clearly more convenient venue for this case than the Western District of Texas ("WDTX"). Of the eight public and private interest factors pertinent to the issue, only one factor—"cost of attendance for willing witnesses"—might be found to slightly favor transfer. Two factors—"availability of compulsory process" and "administrative difficulties"—disfavor transfer. The "other practical problems" factor either disfavors transfer or is neutral. The remaining four factors are neutral and therefore do not favor transfer. For these reasons, discussed below, the Court should deny transfer.

## II.    ARGUMENT

A defendant requesting transfer of venue under § 1404(a) bears the burden of showing that the proposed transferee forum is "clearly more convenient" than the plaintiff's chosen forum. *In re Volkswagen, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). "[T]he standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer …." *Defense Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022).

"The determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. US. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") . The public factors include: "(1) the administrative difficulties flowing from

REDACTED PUBLIC VERSION

court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

A.     **The Private Interest Factors**

1.     **The "Relative Ease Of Access To Sources Of Proof" Factor Is Neutral And Does Not Favor Transfer.**

For this factor, "a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, *2 (W.D. Tex. Sept. 10, 2019). Apple cites *Koss Corp. v. Plantronics, Inc.*, 6:20-CV-00663-ADA, 2021 WL 2075685, at *3 (W.D. Tex. May 20, 2021), for the proposition that "Fifth Circuit precedent makes clear that this factor speaks to the physical location of documents; it does not concern the locations from which such documents are accessible." Dkt. #29 at 8. But the Fifth Circuit recently clarified that this factor "bears much more strongly on the transfer analysis when … the evidence is physical in nature." *In re Planned Parenthood Fed. Of Am. Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). Thus, the Fifth Circuit held, a district court permissibly may conclude that this factor does not support transfer where "the vast majority of the evidence is electronic, and therefore equally accessible in either forum," and "some remaining documentary evidence" is located in both venues. *Id.* Consistently with this Fifth Circuit precedent, which governs here, the Federal Circuit recently ruled that a district court did not abuse its discretion in denying transfer from WDTX to EDMI because, among other things, the defendant's evidence stored electronically in Michigan could be accessed by the defendant from its offices in WDTX. *See In re General Motors Co.*, 2023-105, 2023 WL 355108, *1-2 (Fed. Cir. Jan. 23, 2023).

Here, Apple's declarant, Mark Rollins, testifies that: (a) working files and electronic documents concerning the accused features reside on local computers and/or servers either located in or around NDCA or which are accessible in NDCA," Dkt. #29-1, ¶ 9; (b) "the relevant source

REDACTED PUBLIC VERSION

code associated with the accused features was developed and tested in California," and "the source code can be accessed by Apple employees working on the accused features in NDCA," Dkt. #29-1, ¶ 9; (c) "working files, electronic documents, and business records [regarding "marketing, licensing, and finances associated with he accused products"] reside on local computers and/or servers either located in or around the Santa Clara Valley area or accessible in the Santa Clara Valley area," Dkt. #29-1, ¶ 20; and (d) "[d]ocuments concerning sales and financial information for these products reside on local computers and/or servers either located in or around the Santa Clara Valley area, California, or accessible in the Santa Clara Valley area," Dkt. #29-1, ¶ 24. At deposition, Mr. Rollins admitted that all of these electronically-stored documents are accessible by Apple in Texas. *See* Shaw Decl. ¶ 2, Ex. 1001 at 62:11-22; 74:21-75:6; 89:12-93:6; 110:1-8; 120:12-121:10; 128:6-129:18. And, Apple has not identified, in Mr. Rollins' declaration or anywhere else, any pertinent physical evidence located in NDCA.

While recognizing that the bulk of the relevant evidence usually comes from the accused infringer, the Court has also noted that "not that all of the relevant evidence must always come from only the accused infringer." *Bel Power Sol'ns Inc. v. Monolithic Power Sys., Inc.*, 6:21-cv-655-ADA, 2022 WL 2161056, *6 (W.D. Tex. June 15, 2022) (citing *10Tales, Inc. v. TikTok Inc.*, 6:20-CV-00810-ADA, 2021 WL 2043978, *2 (W.D. Tex. May 21, 2021)). "Thus, the Court looks to the location of all evidence relevant to this case." *Id.*

All of Smart Mobile's documents are stored in WDTX. *See* Sunil Rao Decl. ¶ 13. These include documents related to the conception, reduction to practice, and diligence between the conception and reduction to practice, of the subject matter of the asserted patents, which are in Austin. *See id.* Smart Mobile's documents related to prosecution of the patent applications that ultimately issued as the asserted patents are in Waco and Austin. *See id.* Smart Mobile's documents related to potential sales and licensing of the asserted patents are in Austin. *See id.* Smart Mobile's

documents related to analyses of the value, validity, enforceability, and infringement of the asserted patents are in Austin. *See id.* Smart Mobile's documents that are or may be prior art to the asserted patents are in Austin. *See id.* Smart Mobile's other business records, including corporate formation documents, agreements between members, employee agreements, contractor agreements, agreements with third parties, and financial records, are stored in Austin. *See id.* Smart Mobile's documents located in WDTX include documents transferred to Smart Mobile that were formerly in the possession of the asserted patents' prior owners, IP Holdings and Smart Mobile, Inc. (now known as BrandCRM, Inc.). *See id.*, ¶ 14. Some of Smart Mobile's documents are kept in paper form while others are kept electronically. *See id.*, ¶ 13. Smart Mobile maintains no documents in NDCA and has no document custodians who reside in NDCA. *See id.*, ¶ 12.

In sum, given that (a) Apple has identified no pertinent physical evidence in NDCA, (b) Apple's documentary and source code evidence is stored electronically and is accessible in WDTX, and (c) Smart Mobile's electronic and paper documents are in WDTX and none are in NDCA, the Court can and should conclude that this factor is neutral and therefore does not favor transfer. *See In re Planned Parenthood*, 52 F.4th at 630; *In re General Motors*, 2023 WL 355108, *1-2.

## 2. The "Availability Of Compulsory Process To Secure The Attendance Of Witnesses" Factor Disfavors Transfer to NDCA.

Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, *14 (citing *Volkswagen II*, 545 F.3d at 316). "[W]hen there is no indication that the witness is willing," the Court must presume that its subpoena power will be necessary to secure the witness' attendance. *In re DISH Network LLC*, 2021-182, 2021 WL 4911981, *3 (Fed. Cir. Oct. 21, 2021)).

Apple argues that "relevant third-party witnesses are located in NDCA," whom Apple identifies as "the three inventors of the asserted patents, as well as many engineers from Qualcomm and Broadcom who developed the accused MIMO functionality in the accused products." Dkt. #29 at 10. The Court should reject these unsubstantiated assertions.

First, two of the three named inventors of the asserted patents, Sunil Rao and Sanjay Rao, live in Austin, Texas, not NDCA. *See* Sunil Rao Decl. ¶¶ 3, 6; Sanjay Rao Decl. ¶¶ 2, 4. The third inventor, Raman Rao, is deceased. *See* Sunil Rao Decl. ¶ 18. Compulsory process in NDCA will be neither necessary nor even available to secure the attendance of the inventors.

Second, Apple presents no evidence that "engineers from Qualcomm and Broadcom who developed the accused MIMO functionality in the accused products" are located within NDCA's subpoena power. Mr. Rollins testifies only that Apple personnel "communicate with" Qualcomm and Broadcom personnel located in California "as it relates to the accused" chipsets that feature MIMO functionality. Dkt. #29-1, ¶¶ 16, 18; *see also* Dkt. #64-3, ¶ 6. This does not substantiate Apple's contention that the Qualcomm and Broadcom engineers "who developed the accused MIMO functionality in the accused products" are "located in NDCA." Apple presents no other evidence. Each of Qualcomm and Broadcom has numerous offices outside of NDCA and even outside of California, including Broadcom's offices in Austin and Plano, Texas.[1] On the evidence presented, whether the engineers who developed the MIMO functionality in the accused products are located in NDCA is speculative at best. And, compulsory process will be unavailable in NDCA to force Qualcomm or Broadcom to produce unidentified trial witnesses who are knowledgeable about MIMO functionality or other specified topics. *See Donoghue v. Orange County*, 848 F.2d 926, 932 (9th Cir. 1987) (rejecting argument that "because Fed.R.Civ.P. 30(b)(6) permits a party to depose a

---

[1] *See* https://www.qualcomm.com/company?#locations; https://www.broadcom.com/company/contact/locations.

REDACTED PUBLIC VERSION

corporation … by simply describing 'with reasonable particularity the matters on which examination is requested' and then letting the [corporation] designate the individual to testify, the same policy should apply to Rule 45 requirements for subpoenaing witnesses"). Nor will compulsory process be available in NDCA to force the appearance at trial of specific Qualcomm or Broadcom employees who reside more than 100 miles from NDCA. *See Issagholi v. McLaren Automotive, Inc.*, 19-cv-07616, 2021 WL 43552297, at *1 (C.D. Cal. Jul. 9, 2021) (quashing trial subpoena directed to defendant's employee who resided in Texas). Thus, the Court should give no weight to Apple's compulsory process arguments.

Third, although Apple admits that one of the "accused features," MIMO, is "implemented in chipsets supplied by third parties," including Intel, Dkt. #29 at 2-3; Dkt. #29-1, ¶ 19, Apple ignores the Intel engineers who developed this functionality of Apple's accused products. Many of these individuals are in WDTX. For example, former Intel engineer Dhinakarraj Gantala served as the Global R&D Product Head for Intel's XMM 7660 cellular modem. *See* Shaw Decl. ¶ 3, Ex. 1002 at 9:12-11:18, 23:12-16. The XMM 7660 was used in certain accused Apple products, including the iPhone 11, 11 Pro, 11 Pro Max, and SE (2nd Generation), and is at the core of many of Smart Mobile's infringement contentions. *See* Shaw Decl. ¶¶ 4-5, Exs. 1003, 1004.[2] Dr. Gantala was the most knowledgeable person at Intel about the XMM 7660's design and development. *See* Shaw Decl. ¶ 3, Ex. 1002 at 12:3-7. Among other things, he managed the design and development of the XMM 7660's enhanced MIMO functionality. *See* Shaw Decl. ¶ 3, Ex. 1002 at 40:9-42:21, 48:9-49:14.

███████████████████████████████████████████████████████

---

[2] Smart Mobile's infringement contentions submitted as Exhibit 1003 refer, for specific claim limitations, to Appendix A, Column F. Appendix A has been submitted to the Court as Exhibit 1004. Column F identifies the pertinent "Transmit and Receive Units/Components" for each accused product, including the Intel XMM 7660 for the iPhone 11, 11 Pro, 11 Pro Max, and SE (2nd Generation).

**REDACTED PUBLIC VERSION**

███████████████████████████████████████████████████ *See* Shaw Decl.

¶ 3, Ex. 1002 at 49:19-50:18, 54:3-19, 106:22-108:13. ██████████████████

████████████████████████████████████████████████████████ *See*

Shaw Decl. ¶ 3, Ex. 1002 at 40:9-42:21, 46:22-50:18, 54:3-19, 106:22-108:13. Both MIMO and

carrier aggregation are among the functionalities targeted by Smart Mobile's infringement

contentions, including the contentions concerning Smart Mobile's US Patent No. 9,191,083. *See*

Shaw Decl. ¶ 4, Ex. 1003 (limitations 5[e], 5[i], 8[d], 12[b], 12[c], 12[d], 12[g]). ██████████

████████████████████████████████████████ *See* Shaw

Decl. ¶ 3, Ex. 1002 at 7:20-21, 15:20-22, 49:15-18, 51:18-22. ██████████████████

█████████████████████████████████████████████████████████████

*See* Shaw Decl. ¶ 3, Ex. 1002 at 54:3-22. 62:23-63:11. This evidence indicates that multiple former

Intel employees located in or near Austin, including at least Dr. Gantala and ███████, are likely

to be relevant witnesses in this case. Because they are in Texas, they would not be subject to

compulsory process in NDCA.

    In sum, Apple has not substantiated its contention that the "compulsory process" factor favors

transfer to NDCA. The factor actually *disfavors* transfer, because pertinent third party witnesses

would be subject to compulsory process in WDTX but not in NDCA.

        **3.**      **The "Cost Of Attendance For Willing Witnesses" Factor Is Neutral Or Only Slightly Favors Transfer.**

    The most important factor in the transfer analysis is witness convenience. *In re Genentech,*

*Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). This factor considers the cost of attendance of all willing

witnesses. *In re Pandora Media, LLC*, 2021-172, 2021 WL 4772805, *2–3 (Fed. Cir. Oct. 13, 2021).

The inquiry "should focus on the cost and inconvenience imposed on the witnesses by requiring them

REDACTED PUBLIC VERSION

to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, *4 (Fed. Cir. Sept. 27, 2021).

Here, Apple argues that "nine of the likely Apple witnesses are based in NDCA" and "would face significantly greater travel time, distance, and expense if required to attend trial in Waco, Texas." Dkt. #29 at 11. Although testifying in WDTX might be somewhat less convenient than testifying in NDCA for Apple's NDCA-based employees, Apple's purported concern is exaggerated. First, additional expense associated with travel and lodging likely would be borne by Apple, a multi-billion dollar company, rather than individual employees. Second, Apple's NDCA-based employees can remain productive while in Texas because they can work securely and efficiently at Apple's Austin campus, which has facilities for 5,000 employees. *See* https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/.

Transferring this case to NDCA would impose relatively greater cost and inconvenience upon Smart Mobile's witnesses. First, each of Sunil Rao and Sanjay Rao resides in Austin. *See* Sunil Rao Decl. ¶ 6; Sanjay Rao Decl. ¶ 4. Transferring the case to NDCA would require them to fly nearly 4 hours from Austin to San Francisco, *see* Shaw Decl. ¶ 6, Ex. 1005, plus travel an hour or more to get to and from airports. Smart Mobile's employee and strategic advisor, William Heye, resides in Plano, Texas. *See* Heye Decl. ¶ 3. Transferring the case to NDCA would require Mr. Heye to fly nearly 4 hours from Dallas to San Francisco, plus travel an hour or more to get to and from airports. So attending trial would effectively entail a multi-day trip for each witness. Smart Mobile is a small company without resources comparable to Apple's and without a campus in NDCA at which its traveling personnel can work.

Because Smart Mobile's witnesses are in WDTX and Apple's witnesses are in NDCA, the Court should find that the "cost of attendance" factor is neutral. *E.g.*, *Viasat, Inc. v. Western Digital*

REDACTED PUBLIC VERSION

*Techs., Inc.*, 21-cv-01230-ADA, 2022 WL 17815126, *6 (W.D. Tex. Dec. 12, 2022) ("Because relevant witnesses are in both districts, the Court finds that this factor is neutral.").

> **4.      The "Other Practical Problems That Make Trial Of A Case Easy, Expeditious And Inexpensive" Factor Disfavors Transfer Or Is Neutral.**

Courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. "[T]he existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, 6:11-cv-655, 2013 WL 9600333, *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation … involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

Here, in *Smart Mobile Technologies LLC v. Samsung Electronics Co. Ltd. and Samsung Electronics America, Inc.,*, 21-cv-00701-ADA, Smart Mobile asserts eleven of the same patents asserted against Apple in this case. *Compare Smart Mobile Techs. LLC v. Apple Inc.*, 21-cv-00603-ADA, Dkt. #1, ¶¶ 2-15, *with Smart Mobile Techs. LLC v. Samsung Elecs. Co., Ltd. et al.*, 21-cv-00701-ADA, Dkt. #1, ¶¶ 2-13. Both cases target smart phones and tablets and the same or similar technologies and functionalities, including the capability to switch dynamically between wireless networks, the capability of communicating with a server that enhances the functionality of the devices, and the ability to multiplex signal streams or access multiple signal streams simultaneously or sequentially to achieve enhanced communication capabilities. *Compare Smart Mobile Techs. LLC v. Apple Inc.*, 21-cv-00603-ADA, Dkt. #1, ¶¶ 36-175, 190-260, 273-311 *with Smart Mobile Techs. LLC v. Samsung Elecs. Co., Ltd. et al.*, 21-cv-00701-ADA, Dkt. #1, ¶¶ 34-195, 211-252. Apple concedes that the two cases are "related," Dkt. #29 at 13, while Samsung has said that there is

REDACTED PUBLIC VERSION

"substantial overlap" between the cases because they involve many of the same patents and target "similar functionalities," 21-cv-00701-ADA, Dkt. #42 at 11-12.

If the Court denies Samsung's transfer motion, as it should, then the "practical problems" factor would disfavor transferring the *Apple* case. For now, the factor is neutral.

### B.   The Public Interest Factors

#### 1.   The "Administrative Difficulties Flowing From Court Congestion" Factor Disfavors Transfer.

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, *6 (W.D. Tex. Jan. 26, 2021). The Court considers the "speed with which a case can come to trial and be resolved ...." *Genentech, Inc.*, 566 F.3d at 1347. Although the Federal Circuit has sometimes disparaged this factor as "speculative," *id.*, the Fifth Circuit recently made clear that the factor carries weight when "docket efficiency can be reliably estimated," which "the district court is better placed to do" than an appellate court, *In re Planned Parenthood*, 52 F.4th at 631.[3]

Apple argues that, "[a]bsent a notable difference in congestion between the two districts, this factor is neutral." Dkt. #29 at 14. But there *are* notable differences, which Apple ignores. The latest Federal Court Management Statistics show that the median time to trial for civil cases generally is more than six months shorter in WDTX compared to NDCA. *See* Shaw Decl. ¶ 7, Ex. 1006. More pertinently, this Court's average time to trial for patent cases involving networking and computer technologies is nearly a year shorter than NDCA's (2.2 years vs. 3.1 years). *See* Shaw Decl. ¶ 8,

---

[3] The Federal Circuit has also seemingly engrafted a requirement that the patent holder be "engaged in product competition in the marketplace and ... threatened in the market in a way that ... might add urgency to case resolution and give some significance to the time-to-trial difference." *In re Google LLC*, --- 4th ---, 2023 WL 1425780, *3 (Fed. Cir. Feb. 1, 2022). But such a requirement finds no support in Fifth Circuit precedent, which controls here.

10

REDACTED PUBLIC VERSION

Ex. 1007.[4] The Federal Circuit has emphasized the importance of rapid disposition of patent cases.

*Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989); *see also Ethicon Endo-Surgery,*

*Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016) (acknowledging Congress's preference

for "quick" resolution of patent disputes). Based upon this data, it can be reliably estimated that this

Court's time to trial for patent cases involving technologies similar to those presented here is faster

by nearly a year than NDCA's. This factor disfavors transfer.

### 2.     The "Local Interest In Having Localized Interests Decided At Home" Factor Is Neutral and Does Not Favor Transfer.

The Court must evaluate whether there is a local interest in deciding local issues at home.

*Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection

between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, 3:14-cv-04387-K, 2015 WL

13870507, *4 (N.D. Tex. Jul. 23, 2015). "This factor most notably regards not merely the parties'

significant connections to each forum writ large, but rather the 'significant connections between a

particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In*

---

[4] *See also, e.g.*, *MV3 Partners v. Roku, Inc.*, 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months); *CloudofChange, LLC, v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months); *Profectus Tech. LLC v. Google LLC*, 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months); *VideoShare LLC v. Google LLC*, 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months); *NCS Multistage Inc. v. Nine Energy Serv.'s, Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24 months); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months); *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245-ADA (W.D. Tex., filed March 27, 2020) (26.5 months); *SunStone Info. Def., Inc. v. International Bus. Machines Corp.*, No. 6:20-cv-1033-ADA (W.D. Tex., filed Nov. 9, 2020) (21.0 months); *NCS Multistage Inc. v. TCO Products Inc.*, No. 6:20-cv-00622-ADA (W.D. Tex., filed Sept. 9, 2020) (23.4 months); *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. filed Nov. 16, 2020) (23.1 months).

*re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). In addition, "[i]mportant considerations include the location of the injury, witnesses, and the Plaintiff's residence." *Defense Distributed*, 30 F.4th at 435.

Apple contends that NDCA has the stronger "local interest" in this case because, according to Apple, "[t]he accused features were designed and developed entirely in California, primarily in NDCA," and that "a jury of Texans" would have "no local connection to the community in which the allegedly infringing products originated." Dkt. #29 at 14-15. Apple overstates NDCA's interest while understating WDTX's interest.

First, although it may be true that certain design and development activity with respect to some "accused features" occurred in NDCA, some pertinent design and development activity did not. For example, as Apple admits, the MIMO functionality of the accused Apple products was actually implemented in chipsets supplied by third parties Broadcom, Qualcomm, and Intel. *See* Dkt. #29 at 2-3. The MIMO design and development work was performed by these suppliers, not Apple. *See* Dkt. #29-1, ¶¶ 16, 18. Apple has not substantiated that any of this design and development work occurred in NDCA. ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████[5] *See* Shaw Decl. ¶ 3, Ex. 1002 at 54:3-22, 62:23-63:11. ████████████████████

████████████████████████████████████████████████ *See* Shaw Decl. ¶ 3, Ex. 1002 at 53:7-54:2, 57:23-59:14, 63:18-70:5; 74:9-78:13, 89:12-92:9, 98:17-18. The XMM 7560 was used in accused Apple products including the iPhone XR, XS, and XS Max, and is at the core

---

[5] These employees included a number of individuals who are now employed by Apple in Austin, including Phuc Dinh, Rajeshwary Tayade, and Joseph Cramer. *See* Shaw Decl. ¶¶ 11-13, Exs. 1010-1012.

REDACTED PUBLIC VERSION

of many of Smart Mobile's infringement contentions. *See* Shaw Decl. ¶¶ 4-5, Exs. 1003, 1004.[6] So pertinent design and development activity occurred in WDTX, which supports a local interest here.

Second, material manufacturing steps for the central processing unit / system on chip ("CPU/SoC") of many of the accused products occurred in Austin, Texas. In particular, wafers for Apple's A5-A7 and A9 series CPU/SoCs were manufactured in WDTX by Samsung for Apple. *See* Shaw Decl. ¶ 9, Ex. 1008. This manufacturing activity occurred during the period 2011-2018. *Id.* Smart Mobile's infringement contentions detail the central role that the A5-A7 and A9 CPU/SoCs played in Apple's infringement of the asserted patents. *See* Shaw Decl. ¶¶ 4-5, Exs. 1003, 1004.[7]

Third, material manufacturing steps for the cellular module component of the accused products occurred in Texas. In particular, Qorvo, Inc. supplied wireless components—filters, power amplifiers, and tuners—to Apple that were incorporated into "most" of the accused products. *See* Shaw Decl. ¶ 10, Ex. 1009 at 9:11-10:12. The power amplifiers amplify the cellular signals transmitted by the accused products, with the amplification varying depending on the frequency band and other requirements. *Id.* at 12:11-13:17. The tuners tune the device antenna to maximize power transfer and to transmit on particular cellular frequency bands. *Id.* at 14:11-15:13. Qorvo manufactured and tested the wafers for at least the filters and power amplifiers in Richardson, Texas. *Id.* at 17:17-18:4, 20:4-24:4, 27:2-4, 27:23-28:12. Power levels and tuning are relevant to Smart Mobile's infringement contentions. *E.g.*, Shaw Decl. ¶ 4, Ex. 1003 (US Patent No. 9,756,168, limitations [2k], [2l], [2n], [4n], [4p]).

---

[6] As noted above, Smart Mobile's infringement contentions (Exhibit 1003) refer, for various limitations, to Column F of Appendix A (Exhibit 1004). Column F identifies the "Transmit and Receive Units/Components" of each accused product, including the Intel XMM 7560 for the iPhone XR, XS, and XS Max.

[7] Smart Mobile's infringement contentions (Exhibit 1003) refer, for specific claim limitations, to Column C of Appendix A (Exhibit 1004). Column C identifies the pertinent "SOC" for each accused product, including the A5-A7 and A9 processors.

REDACTED PUBLIC VERSION

Given that accused features were designed and developed in Austin, and that pertinent components were at least partially manufactured and tested in Austin and Richardson, "a jury of Texans" would have a "local connection to the community in which the allegedly infringing products originated."

In addition, WDTX has a strong local interest in this case because Smart Mobile resides in WDTX, its witnesses are here, and its injury from Apple's infringement is felt here. *See Defense Distributed*, 30 F.4th at 435; *see also Jawbone Innovations, LLC v. Google LLC*, 21-cv-00985-ADA, 2022 WL 12078627, *12 (W.D. Tex. Oct. 20, 2022) (finding that plaintiff's presence and activities in WDTX supported local interest that weighed against transfer). Smart Mobile's principal place of business is in Austin. *See* Sunil Rao Decl. ¶ 2. Smart Mobile has been registered to do business in Texas since March of 2022, with retroactive coverage to March of 2021. *See id.*, ¶ 2. Smart Mobile's members and managers reside in Austin, while its employee resides in nearby Plano. *See id.*, ¶ 10. Smart Mobile conducts operations in WDTX, including product development and market research. *See id.*, ¶ 8. That some of Smart Mobile's activities in WDTX post-date the Complaint does not undercut WDTX's local interest.[8]

In sum, both WDTX and NDCA have a local interest in this case. The Court should find that the "local interest" factor is neutral and therefore does not favor transfer.

---

[8] "For purposes of transfer, a court does not need to look solely at the situation as it existed at time of filing of the Complaint when examining convenience factors. While a court must do so for purposes of considering where the suit 'might have been brought' under § 1404(a), the 'convenience' clause 'includes no comparable language mandating that courts look only backward.'" *VoIP-Pal.com*, 2022 WL 11455997, *2 (citing *Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-CV-00097, 2022 WL 1593366, *6 (W.D. Tex. May 19, 2022) (citing *Seagen Inc. v. Daiichi Sankyo Co.*, No. 2:20-CV-00337-JRG, 2021 WL 3620428, *2 (E.D. Tex. Apr. 19, 2021)). Therefore, it is appropriate for the Court to "consider facts arising after the original transfer motion." *VoIP-Pal.com*, 2022 WL 11455997, *2 (citing *Unification Techs. LLC v. Micron Tech., Inc.*, No. 6:20-CV-500-ADA, 2022 WL 92809, *3 (W.D. Tex. Jan. 10, 2022)).

**REDACTED PUBLIC VERSION**

    **3.**    **The "Familiarity Of The Forum With The Law That Will Govern The Case" Factor Is Neutral and Does Not Favor Transfer.**

Apple agrees that this factor is neutral and does not favor transfer. *See* Dkt. #29 at 15.

    **4.**    **The "Avoidance Of Unnecessary Problems Of Conflict Of Laws" Factor Is Neutral And Does Not Favor Transfer.**

Apple agrees that this factor is neutral and does not favor transfer. *See* Dkt. #29 at 15.

**III.**    <u>**CONCLUSION**</u>

For the reasons set forth above, Apple has not shown that NDCA is "clearly more convenient" than WDTX. The Court should deny Apple's motion to transfer.

Dated: February 2, 2023

Respectfully submitted,

*/s/ Greer N. Shaw*
Philip J. Graves *(Pro Hac Vice)*
CA State Bar No. 153441
Greer N. Shaw *(Pro Hac Vice)*
CA State Bar No. 197960
**GRAVES & SHAW LLP**
355 S. Grand Ave., Suite 2450
Los Angeles, CA 90071
Telephone: (213) 204-5101
Email: pgraves@gravesshaw.com
Email: gshaw@gravesshaw.com

**STECKLER WAYNE CHERRY & LOVE, PLLC**
8416 Old McGregor Road
Waco, Texas 76712
Telephone: (254) 651-3690
Facsimile: (254) 651-3689
Craig D. Cherry (State Bar No. 24012419)
Email: craig@swclaw.com
Mark D. Siegmund (State Bar No. 24117055)
Email: mark@swclaw.com

Paul J. Skiermont (TX Bar No. 24033073)
pskiermont@skiermontderby.com
Steven J. Udick (TX Bar No. 24079884)
sudick@skiermontderby.com
Todd A. Martin (TX Bar No. 24066556)
tmartin@skiermontderby.com

REDACTED PUBLIC VERSION

**SKIERMONT DERBY LLP**
1601 Elm Street, Suite 4400
Dallas, TX 75201
Phone: (214) 978-6600
Fax: (214) 978-6601

Rex Hwang (CA Bar No. 221079)
rhwang@skiermontderby.com
**SKIERMONT DERBY LLP**
633 W. Fifth Street, Suite 5800
Los Angeles, CA 90071
Phone: (213) 788-4500
Fax: (213) 788-4545

**COUNSEL FOR PLAINTIFF**
**SMART MOBILE TECHNOLOGIES LLC**

REDACTED PUBLIC VERSION

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 2nd day of February, 2023, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first-class mail on this same date.


Dated:  February 2, 2023                      */s/ Greer N. Shaw*
                                                                Greer N. Shaw