## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **SMART MOBILE TECHNOLOGIES LLC,** | § § § | |
| *Plaintiff* | § | **W-21-CV-00603-ADA** |
| | § | |
| **-vs-** | § § | |
| **APPLE INC.,** | § § | |
| *Defendant* | § § § | |

### ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER

Before the Court is Defendant Apple Inc.'s ("Apple") Motion to Transfer Venue to the Northern District of California. ECF No. 29. Plaintiff Smart Mobile Technologies LLC ("Smart Mobile") opposes the motion. ECF No. 95. Apple filed a reply to further support its motion. ECF No. 104. After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS** Apple's motion to transfer venue to the Northern District of California.

### I.      FACTUAL BACKGROUND

In its complaint, Smart Mobile claims Apple infringes of U.S. Patent Nos. 8,442,501 (the "'501 patent"), 8,472,936 (the "'936 patent"), 9,472,937 (the "'937 patent"), 8,761,739 (the "'739 patent"), 8,824,434 (the "'434 patent"), 8,842,653 (the "'653 patent"), 8,982,863 (the "'863 patent"), 9,019,946 (the "'946 patent"), 9,049,119 (the "'119 patent"), 9,191,083 (the "'083 patent"), 9,319,075 (the "'075 patent"), 9,614,943 (the "'943 patent"), and 9,756,168 (the "'168 patent") (collectively, the "asserted patents"). *Id.* ¶ 1−15. The '501, '936, '937, '739, '119, and '168 patents are directed to "improved wireless communication systems and devices having voice and data communication capability, the capability to switch dynamically between wireless networks, and the capability of communicating with a server than enhances the functionality of the

devices." *Id.* ¶ 24. The '434, '653, '863, '946, '083, '075, and '943 patents are directed to "enhancements to mobile device communications functionality." *Id.* ¶ 24.

Smart Mobile, the owner of the asserted patents, is a limited liability company organized under the laws of Delaware. *Id.* ¶ 17. Smart Mobile's principal place of business is in Austin, Texas. *Id.* Apple is a corporation organized under the laws of California. *Id.* ¶ 18. Apple has at least one regular and established place of business in this District. *Id.* According to Smart Mobile, Apple sells products that infringe the asserted patents, including the iPhone smartphone, iPad tablet, and Apple Watch. *Id.* ¶ 36. The Court will refer to these products as the "accused products."

Along with this case, Smart Mobile filed an action against Samsung Electronics Co. Ltd., Inc. and Samsung Electronics America, Inc. *Smart Mobile Technologies LLC v. Samsung Electronics Co. Ltd., Inc. et al.*, No. 6:21-cv-701-ADA (W.D. Tex. July 2, 2021), ECF No. 1 [hereinafter "Samsung Litigation"]. The Samsung Litigation involves many of the same patents that are asserted in this case.

After responding to Smart Mobile's complaint, Apple filed this motion to transfer. ECF No. 29. Apple does not argue that the Western District of Texas ("WDTX") is an improper venue for this case; instead, it argues that the Northern District of California ("NDCA") is a more convenient forum, pointing to the location of potential witnesses and the relevant records in California. *Id*. at 1. Smart Mobile contends that this case should remain in the WDTX, pointing to, among other factors, Smart Mobile's witnesses and evidence in Texas. ECF No. 95 at 1, 3, 8.

## II.    LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where

it might have been brought . . . " *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [hereinafter *Volkswagen II*]. If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more

convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III.   DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. Apple argues that the threshold determination is met because Apple resides in the NDCA. No. 29 at 8. Smart Mobile does not address the threshold determination. ECF No. 95. Because Apple has shown that venue is proper in the NDCA, the Court determines that the threshold determination is met. Because the threshold determination is met, the Court now analyzes the private and public interest factors to determine whether the NDCA is a clearly more convenient forum than the WDTX.

### A.  The Private Interest Factors

#### i.   *The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen*

*II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* However, the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342.

Apple argues that this factor favors transfer because nine of Apple's likely witnesses reside in the NDCA. ECF No. 29 at 11. Apple's NDCA-based employees include: (1) Cristoph Paasch, a Software Development Engineer knowledgeable about the research and design of multipath TCP ("MPTCP") functionality of the accused products; (2) Anumita Biswas, a Software Development Engineer Manager knowledgeable about the research, design, and development of MPTCP implementation in Siri; (3) Max Ball, a Software Development Engineer knowledgeable about the research, design, and development of MPTCP implementation in Maps; (4) John Su, an Engineering Manager knowledgeable about the research, design, and development of MPTCP implementation in Music; (5) Welly Kasten, a Software Development Engineer Manager knowledgeable about the integration of MIMO functionality over WiFi in Broadcom's chipsets in the accused products; (6) Pashant Vashi, a Software Engineering Manager knowledgeable about the integration of MIMO functionality in Qualcomm's chipsets in the accused products; (7) Wiley Hodges, a Product Management Director knowledgeable about the marketing of the accused products; (8) Jayna Whitt, a Principal Counsel knowledgeable about Apple's licensing of intellectual property for the accused products; and (9) Mark Rollins, a Finance Manager knowledgeable about Apple's sales and financial information for the accused products. *Id.* at 3−4.

Apple also identifies one witness in Seattle, Washington: John Eckles, a Site Reliability Engineering Manager knowledgeable about the research, design, and development of the MPTCP implementation in Siri. *Id.* at 3. Apple argues that none of its witnesses work in Texas or work with anyone in Texas. *Id.* at 11. Apple argues that its witnesses would incur significantly greater travel time, distance, and expense if required to attend trial in Waco. *Id.* Apple argues that the convenience of its witnesses cannot be discounted just because these witnesses are employees of a party. *Id.*

In response, Smart Mobile does not dispute the relevance of Apple's witnesses. ECF No. 95 at 8. Instead, Smart Mobile argues that Apple exaggerates the inconvenience for its NDCA-based and Washington-based employees. *Id.* Smart Mobile argues that the WDTX is not an inconvenient forum for these employees because "additional expense associated with travel and lodging would be borne by Apple, a multi-billion dollar company, rather than individual employees." *Id.* Smart Mobile also argues that Apple's employees can remain productive while in Texas because they can work in Apple's Austin offices. *Id.*

The Court rejects Smart Mobile's argument that this factor does not favor transfer because Apple's NDCA-based and Washington-based employees will not have to pay the cost of attending trial in the WDTX. Even though Apple will likely bear the cost for these employees to attend trial, these employees will still suffer "the personal costs associated with being away from work, family and community." *Volkswagen II*, 545 F.3d at 317. And the Federal Circuit has held that this factor should not be afforded less weight when the witnesses are party witnesses. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021). Further, Apple will still incur the additional expense of airfare, meals, and lodging for these employees. *In re Acer Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010). The Court also rejects Smart Mobile's argument that this factor does not favor transfer

because Apple's NDCA-based and Washington-based employees can use Apple's Austin offices while attending trial in Waco. While Apple's employees may be able to use Apple's Austin offices while in Texas to testify at trial, they would still face the personal costs of being away from their homes and families for an extended period of time. The Court finds that the presence of ten identified Apple employees in the NDCA and Washington weigh in favor of transfer. Smart Mobile does not dispute the relevance of these Apple employees. Further, the identified Apple employees would find the NDCA a more convenient forum.

Apple also argues that Smart Mobile's place of business in this District does not weigh against transfer because the asserted patents were previously owned by different entities all located in the NDCA. ECF No. 29 at 12. Apple alleges that the inventors of the asserted patents reside in Palo Alto, California. *Id.* In response, Smart Mobile argues that inventors Sunil Rao and Sanjay Rao both reside in Austin, Texas. ECF No. 95 at 8. Smart Mobile explains that the third inventor, Raman Rao, is deceased. *Id.* at 5. Smart Mobile argues that the WDTX is a more convenient forum for Sunil Rao and Sanjay Rao. *Id.* at 8. Smart Mobile also argues that it has an employee, William Heye, who resides in Plano, Texas. *Id.* Smart Mobile argues that the WDTX is a more convenient forum for Mr. Heye. *Id.* In its reply, Apple argues that Smart Mobile's presence in this District is ephemeral. ECF No. 104 at 4. Apple also notes that Sunil Rao stated that he was willing to testify in the NDCA and he has minor children in the NDCA. *Id.* Apple also claims that Sanjay Rao regularly travels to the NDCA. *Id.* Apple further notes that Mr. Heye no longer works for Smart Mobile. *Id.*; ECF No. 100.

The Court finds that the presence of Sunil Rao and Sanjay Rao in the WDTX weighs against transfer. Sunil Rao and Sanjay Rao are inventors of the asserted patents and no doubt possess knowledge relevant to the claimed invention and the prosecution of the asserted patents.

Further, Sunil Rao and Sanjay Rao are the sole members of Smart Mobile. ECF No. 96-2 ¶ 1; ECF No. 96-3 ¶ 1. Thus, they likely possess relevant knowledge regarding Smart Mobile's ownership of the asserted patents and monetization efforts. While Sunil Rao and Sanjay Rao may have moved to the WDTX in anticipation of litigation, they both reside in the WDTX. ECF No. 96-2 ¶ 4; ECF No. 96-3 ¶ 6. Both Sunil Rao and Sanjay Rao have Texas drivers' licenses, and they are both registered to vote in Texas. ECF No. 96-2 ¶ 4; ECF No. 96-3 ¶ 6. Regardless of their reasoning for the move, because Sunil Rao and Sanjay Rao reside in Austin, they will find this Court a more convenient forum than the NDCA. Thus, the Court finds that their presence in the WDTX weighs against transfer.

As for Mr. Heye, the Court also finds that his presence in Texas weighs against transfer. Mr. Heye was Smart Mobile's strategic advisor and helped Smart Mobile with business and marketing plans. ECF No. 96-4 ¶ 2. Mr. Heye also interfaced with Smart Mobile's legal counsel. *Id.* The Court finds that Mr. Heye may possess knowledge regarding Smart Mobile's monetization efforts, including efforts to license the asserted patents. And while Mr. Heye no longer works for Smart Mobile, ECF No. 100, Mr. Heye stated in his declaration that he was willing to testify on behalf of Smart Mobile, ECF No. 96-4 ¶ 9. Because Mr. Heye is willing to testify at trial, the Court considers him under the analysis of this factor. And because Mr. Heye may possess relevant knowledge and he would find this Court a more convenient forum, the Court weighs his presence in Texas against transfer.

The Court finds this factor is weighs at least slightly transfer. The two living inventors of the asserted patents reside in the WDTX. And one former Smart Mobile employee is willing to testify at trial and resides in Texas. But Apple has identified ten employees in the NDCA and Washington that would find the NDCA a more convenient forum. Based on the evidence provided,

the Court concludes that there are more relevant willing witnesses that would find the NDCA a more convenient forum. But the Court does not weigh this factor strongly in favor of transfer because the inventors of the asserted patents reside in this District.

### ii.     The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345).

According to Apple, this factor favors transfer because "[a]ll of the research, design, development, and implementation of the accused features at Apple has taken place at Apple's Cupertino headquarters." ECF No. 29 at 9. Apple argues that all its relevant documents were generated in the NDCA. *Id.* Apple also contends that the relevant source code associated with the accused features was developed and tested in the NDCA. *Id.* Further, Apple asserts that the documents relating to the marketing, sales, financial, and licensing information for the accused products are in or near Cupertino. *Id.* Apple also argues that additional documents from Qualcomm and Broadcom are also likely in California. *Id.* In response, Smart Mobile notes that Apple has not identified any physical evidence located in the NDCA. ECF No. 95 at 3. Smart Mobile further argues that Apple's electronic evidence is accessible in Texas. *Id.* In its reply, Apple argues that electronic evidence is still relevant to the analysis of this factor. ECF No. 104 at 1−2. Apple also argues that its source code can be examined only in the NDCA. *Id.* at 2.

To begin, the Court acknowledges that the Fifth Circuit's decision in *In re Planned Parenthood* indicates a shift in the analysis of this factor. The Fifth Circuit has recently agreed with a district court that concluded that this factor is neutral because electronic evidence is equally accessible in either forum. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). The Fifth Circuit held that "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *Id.* But the Federal Circuit has held that it is an error to conclude this factor is neutral because electronic documents are easily accessible in both forums. *In re Apple, Inc.*, No., 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). To the extent that these two holdings can be reconciled, the Court concludes that the location of physical evidence is more important to this analysis than the location of where electronic documents are typically accessed. However, the Court still considers the location of document custodians of electronic documents in its analysis of this factor. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

While Apple does not identify any physical evidence in the NDCA, the Court finds the presence of Apple employees that create and maintain relevant electronic documents in the NDCA weighs in favor of transfer. Smart Mobile does not dispute that Apple's employees create and maintain relevant documents in the NDCA. Although Apple's documents may be accessible in the WDTX, the Federal Circuit has concluded that it is an error to assume that this factor is neutral because electronic documents are easily accessible in both forums. *In re Apple*, No., 2022 WL 1196768, at *4. Because the custodians of Apple's relevant documents are likely located in the NDCA, the Court concludes that this factor favors transfer.

Apple also argues that this factor does not weigh against transfer because Smart Mobile purportedly has a place of business in Austin. ECF No. 29 at 9.  In response, Smart Mobile argues

that its documents are in the WDTX. ECF No. 95 at 3. Smart Mobile claims that its documents related to conception and reduction to practice of the claimed invention are in Austin. *Id.* Smart Mobile claims that its documents related to prosecution of the asserted patents are in Waco and Austin. *Id.* Smart Mobile's declarant, Sunil Rao, explained that the prosecution documents were moved to Waco because it is "approximately equidistant between Austin and Plano, Texas, where Smart Mobile's employee, William Heye, resides and works." ECF No. 96-3 ¶ 10. Smart Mobile also claims that its documents related to potential sales and licensing of the asserted patents as well as the assignments of the asserted patents are in Austin. ECF No. 96 at 3. In its reply, Apple argues that Smart Mobile's sources of proof cannot outweigh Apple's sources of proof in the NDCA. ECF No. 104 at 2.

The Court finds that Smart Mobile's documents in this District weigh at least slightly against transfer. While Smart Mobile may have moved many of its documents to this District in anticipation of litigation, the Court does not find that this is a case in which Smart Mobile's move was simply "recent, ephemeral, and an artifact of litigation." *In re Samsung*, 2 F.4th at 1378. Rather, Smart Mobile's sole members and the inventors of the asserted patents, Sunil Rao and Sanjay Rao, have moved to the WDTX. ECF No. 96-2 ¶¶ 1–2, 4; ECF No. 96-3 ¶¶ 1–2, 6. Both Sunil Rao and Sanjay Rao have Texas drivers' licenses, and they are both registered to vote in Texas. ECF No. 96-2 ¶ 4; ECF No. 96-3 ¶ 6. Sunil Rao and Sanjay Rao are also both originally from Texas. ECF No. 96-2 ¶ 4; ECF No. 96-3 ¶ 6. And Sunil Rao has been working on developing a mobile device in Belton, Texas with an independent contractor from Austin. ECF No. 96-3 ¶ 7. All of Smart Mobile's operations, including all of its efforts to monetize the asserted patents, are in Texas. *Id.* ¶ 8. Smart Mobile has an electronics project laboratory with various components, tools, equipment, and prototypes in Texas. *Id.* Smart Mobile has tested software applications in or

around Austin, Texas. *Id.* ¶ 15. And one of Smart Mobile's (now former) employees has resided in Texas for many years. ECF No. 85-4 ¶ 3. Thus, even though Sunil Rao and Sanjay Rao's move to Austin may have been in anticipation of litigation, the Court finds that Smart Mobile has established itself in this District. This move does not appear to have the "ephemeral" nature that has been seen in other cases. *See, e.g.*, *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (explaining that a plaintiff's presence in a district is "recent, ephemeral, and a construct for litigation" when the plaintiff's offices in the transferor forum staff no employees and merely store the plaintiff's documents); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (explaining that a plaintiff's presence in a district is recent, ephemeral, and an artifact of litigation when the plaintiff's witnesses were not in the transferor forum). The Court finds that the presence of Smart Mobile's documents in the WDTX weighs at least slightly against transfer. But the Court does not weigh the presence of Smart Mobile's documents in the WDTX heavily against transfer because they were recently moved to this District.

Accordingly, the Court finds that this factor favors transfer. Apple's documents relating to the research, design, and development of the accused products are likely located in the NDCA. While Smart Mobile's documents appear to be stored entirely within this District, these documents were recently moved to the WDTX and "the bulk of the relevant evidence usually comes from the accused infringer." *In re Apple Inc*., 979 F.3d at 1340.

### iii.   *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses

whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, 2018 WL 4692486, at *3 n.1. However, the Fifth Circuit has clarified that "the availability of the compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *In re Planned Parenthood*, 52 F.4th at 630−31 (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488 (6th Cir. 2016)).

Apple argues that this factor favors transfer because the inventors of the asserted patents are in the NDCA. ECF No. 29 at 10. In response, Smart Mobile argues that inventors Sunil Rao and Sanjay Rao both reside in the WDTX and are willing witnesses. ECF No. 95 at 5. Smart Mobile explains that the third inventor, Raman Rao, is deceased. *Id.* Based on the evidence provided, the Court finds that Sunil Rao and Sanjay Rao do not fall under the compulsory process factor. As Smart Mobile explains, Sunil Rao and Sanjay Rao reside in Austin, Texas within the subpoena power of this Court. ECF No. 96-2 ¶ 4; ECF No. 96-3 ¶ 6. But Sunil Rao and Sanjay Rao are members of Smart Mobile, and they are both willing to testify at trial. ECF No. 96-2 ¶¶ 1, 7; ECF No. 96-3 ¶ 1, 19. Because Sunil Rao and Sanjay Rao are willing to testify at trial, they are considered only under the willing witness factor above.

Apple also argues that this factor favors transfer because Broadcom, which supplies the chipsets that contain the source code for the accused MIMO functionality, has relevant employees in California. ECF No. 29 at 6. Similarly, Apple notes that Qualcomm supplies baseband chipsets

that include relevant source code that is not accessible by Apple. *Id.* Apple argues that the relevant Qualcomm engineers are in California. *Id.* Apple only offers the declaration of its employee, Mark Rollins, to support these arguments. *Id.* Mr. Rollins explains that the relevant chipsets are provided by "Broadcom, Qualcomm, and, in the past, Intel." ECF No. 29-1 ¶ 8. Mr. Rollins notes that Welly Kasten's team is responsible for managing the Broadcom WiFi chipsets. *Id.* ¶ 15. Mr. Rollins explains that "Mr. Kasten confirmed that the accused MIMO feature in the Broadcom chipsets was designed and developed by Broadcom" and Apple never participated in the design and development of these chipsets. *Id.* ¶ 16. Mr. Rollins added that "to Mr. Kasten's knowledge, Mr. Kasten and his team communicate with Broadcom employees located in California (and none in Texas) as it relates to the accused Broadcom chipsets." *Id.* As for Qualcomm, Mr. Rollins explains that Prashant Vashi's team is responsible for managing Qualcomm baseband chipsets that implement the accused MIMO over cellular feature. *Id.* ¶ 17. Mr. Rollins adds that "Mr. Vashi confirmed that the accused MIMO feature in the Qualcomm baseband chipsets was designed and developed by Qualcomm" and Apple has never been involved in the design and development. *Id.* ¶ 18. Further, Mr. Rollins states that "to Mr. Vashi's knowledge, Mr. Vashi and his team communicate with Qualcomm employees located in California (and none in Texas) as it relates to the accused Qualcomm baseband chipsets." *Id.* As for Intel, Mr. Rollins explains that "it is [his] understanding that Apple acquired relevant portions of Intel's baseband chipset business in July 2019 and that the Intel personnel who became Apple employees as part of that acquisition were located primarily in California." *Id.* ¶ 19.

In response, Smart Mobile argues that this factor does not favor transfer because Apple does not provide any evidence that relevant engineers from Qualcomm and Broadcomm are located within the subpoena power of the NDCA. ECF No. 95 at 5. Smart Mobile contends that

Apple's evidence, which consists exclusively of Mr. Rollins declaration, merely shows that Apple personnel communicate with Qualcomm and Broadcom personnel located in California. *Id.* Smart Mobile argues that this evidence does not show that Qualcomm and Broadcom engineers that designed and developed the accused MIMO feature are located within the subpoena power of the NDCA. *Id.* Smart Mobile notes that Qualcomm and Broadcom have offices outside the NDCA and Broadcom has offices in Austin and Plano, Texas. *Id.* Smart Mobile also argues that Intel engineers that develop the accused functionality are in the WDTX. *Id.* at 6. Smart Mobile notes that former Intel engineer Dhinakarraj Gantala served as Intel's Global R&D Product Head for Intel's XMM 7660 cellular modem. *Id.* Smart Mobile argues that the XMM 7660 cellular modem was used in certain accused products. *Id.* Smart Mobile claims that "Dr. Gantala was the most knowledgeable person at Intel about the XMM 7660's design and development." *Id.* Smart Mobile also contends that Intel engineer Chris LaRosa is a relevant third-party witness. *Id.* Mr. LaRosa was responsible for ensuring that the enhancements to LTE MIMO functionality were implemented in the XMM 7660. *Id.* at 6−7. Smart Mobile alleges that Dr. Gantala and Mr. LaRosa were also responsible for the enhanced carrier aggregation functionality of XMM 7660. *Id.* at 7. Smart Mobile claims that the MIMO and carrier aggregation features are among the features included in Smart Mobile's infringement allegations. *Id.* Smart Mobile claims that Dr. Gantala and Mr. LaRosa worked for Intel in Austin and at least Dr. Gantala still resides there. *Id.* Smart Mobile alleges that there were roughly one hundred Intel employees in or near Austin that would be relevant witnesses. *Id.*

In its reply, Apple argues that all but one third-party witness—Dr. Gantala—reside within the subpoena power of the NDCA. ECF No. 104 at 2−3. Apple argues that Mr. Rollins declaration states that Broadcom and Qualcomm employees that interact with Apple employees are in

California. *Id.* at 3. Apple argues that Smart Mobile's evidence shows that only one Intel employee, Dr. Gantala, with knowledge of the XMM 7660 modem is located within this District. *Id.* Apple argues that it is "unclear whether [Dr. Gantala] is sufficiently knowledgeable about the accused MIMO functionality to make him a relevant witness." *Id.* As for Mr. LaRosa, Apple contends that Smart Mobile failed to show that Mr. LaRosa resides in this District. *Id.* Apple also notes that Intel's XMM 7660 modem only relates to the accused MIMO functionality and is only in four of the sixty accused products. *Id.*

The Court agrees with Smart Mobile—Apple has not shown that Broadcom and Qualcomm engineers that developed the accused MIMO feature are in the NDCA. Apple has only shown that Apple's employees communicate with Broadcom and Qualcomm employees in California. But these employees could have a range of responsibilities and there is no evidence showing that Apple's employees communicate with Broadcom and Qualcomm engineers that design and develop the accused MIMO functionality. However, the Court weighs the presence of at least some Broadcom and Qualcomm employees in California slightly in favor of transfer. The Court concludes that Apple has shown that it communicates with Broadcom and Qualcomm employees in California. And these Broadcom and Qualcomm employees that communicate with Apple's engineering teams may possess relevant technical information about infringement in this case. They may also possess relevant sales information related to the damages in this case.

The Court finds that the presence of Dr. Gantala, Intel's former Global R&D Product Head for Intel's XMM 7660 cellular modem, weighs against transfer. Dr. Gantala likely possess relevant knowledge about the XMM 7660 cellular modem, which was used in a subset of the accused products. While Apple argues that it is unclear whether Dr. Gantala possess relevant knowledge of the MIMO functionality, the same can be said for Apple's purported third-party witnesses from

Broadcom and Qualcomm. However, the Court declines to weigh Mr. LaRosa or any of the other former Texas-based Intel engineers that worked on the XMM 7660 modem against transfer. While Mr. LaRosa may possess relevant information, Smart Mobile has failed to show that Mr. LaRosa resides within the subpoena power of this Court. Similarly, Smart Mobile has failed to show that any other former Intel engineers reside within the subpoena power of this Court.

Accordingly, the Court finds that this factor is neutral. Apple has provided some evidence suggesting that Broadcom and Qualcomm employees that work with Apple in relation to the accused MIMO functionality are within the subpoena power of the NDCA. Smart Mobile has shown that one relevant former Intel employee, Dr. Gantala, is within the subpoena power of this Court. Because there are likely relevant third-party witnesses in both districts, this factor is netural.

### iv.    All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

Apple argues that this factor is neutral or slightly favors transfer. ECF No. 29 at 13. Apple notes that this case is in its early stages. *Id.* Apple further argues that the co-pending Samsung Litigation is not sufficient to weigh against transfer. *Id.* In response, Smart Mobile contends that

this factor weighs against transfer because of the co-pending Samsung Litigation. ECF No. 95 at 9. Smart Mobile notes that eleven of the patents asserted in this case are also asserted in the Samsung Litigation. *Id.* Smart Mobile also contends that both cases involve "the same or similar technologies and functionalities, including the capability to switch dynamically between wireless networks, the capability of communicating with a server that enhances the functionality of the devices, and the ability to multiplex signal streams or access multiple signal streams simultaneously or sequentially to achieve enhanced communication capabilities." *Id.* Smart Mobile argues that if the Court denies Samsung's Motion to Transfer Venue in the Samsung Litigation, this factor should disfavor transfer. *Id.* at 10. If not, Smart Mobile contends that the factor is neutral. *Id.*

The Court rejects Apple's argument that this factor favors transfer because this case is in its early stages. The relevant inquiry under this factor is whether the circumstances in either the forum would make trial of the matter easier, more expeditious, or less expensive. *Volkswagen II*, 545 F.3d at 314. Even if this case is in its early stages, transferring this matter to the NDCA does not reduce the practical problems before a court in that district. Apple has cited no authority for the proposition that this factor weighs in favor of transfer just because the case is in its early stages.

The Court finds that this factor weighs against transfer because of the co-pending Samsung Litigation. The Court acknowledges that Samsung filed a Motion to Transfer Venue to the NDCA in the Samsung Litigation. *Smart Mobile Technologies LLC v. Samsung Electronics Co. Ltd., Inc. et al.*, No. 6:21-cv-701-ADA (W.D. Tex. Mar. 2, 2022), ECF No. 42. But the Court denied Samsung's Motion. *Smart Mobile Technologies LLC v. Samsung Electronics Co. Ltd., Inc. et al.*, No. 6:21-cv-701-ADA (W.D. Tex. Aug. 14, 2023), ECF No. 117. The Court agrees with Smart Mobile that judicial efficiency would be improved if both cases remain in the same district. The

Samsung Litigation involves many of the same patents asserted in this case. Further, the accused technology is similar between the two cases. Thus, the Court finds that this factor weighs against transfer.

## B.  The Public Interest Factors

### i.  *Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Apple argues that this factor is neutral because the Federal Circuit has stated that there is no significant difference between the caseload or time-to-trial statistics of the WDTX and NDCA. ECF No. 29 at 14 (citing *In re Juniper Networks, Inc.*, 14 F.4th at 1322). Smart Mobile argues that this factor disfavors transfer because this Court's time to trial statistics show that it reaches trial more quickly than the NDCA. ECF No. 84 at 10−11.

The Court notes that the Federal Circuit recently concluded that this factor should not weigh against transfer when the plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). Here, in response to Apple's Motion to Stay Pending *Inter Partes* Review, Smart Mobile stated that it does not currently sell any products. ECF No. 110 at 2 (explaining that "Smart Mobile has developed some applications for the products [it is testing] and built an e-commerce storefront, which the company *intends* to launch when it has the capability for sales, support and customer service" (emphasis added)).

Because Smart Mobile does not currently engage in product competition in the marketplace, the Court believes that this factor is likely neutral under the Federal Circuit's latest guidance.

### ii.  *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft*, 630 F.3d at 1365). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

Apple argues that this factor favors transfer because this case has a greater factual connection to the NDCA than this District. ECF No. 29 at 14. Apple argues that the accused features were designed and developed entirely in California, primarily in the NDCA. *Id.* at 15. Apple argues that this case "calls into question the work and reputation of several individuals

residing" in the NDCA. *Id.* (quoting *In re Hoffman-La Roche*, 587 F.3d at 1336). Apple argues that its general contacts in this forum are not sufficient to give this District a local interest in the outcome of this litigation.

Smart Mobile argues that Apple overstates the NDCA's interest in this litigation. ECF No. 95 at 12. Smart Mobile notes that Apple admits that the accused MIMO functionality was developed by Broadcom, Qualcomm, and Intel. *Id.* Smart Mobile argues that Apple has not shown that this development took place in the NDCA. *Id.* Smart Mobile further contends that the development of Intel's XMM 7660 baseband processor took place in Austin. *Id.* Smart Mobile notes that a few of Apple's current employees worked on Intel's XMM 7660 baseband processor. *Id.* at 12 n.5. Smart Mobile also argues that Samsung manufactured the central processing unit for many of the accused products in Austin. *Id.* at 13. Smart Mobile also argues that Qorvo, Inc. supplied wireless components that were incorporated into most of the accused products. *Id.* Smart Mobile contends that Qorvo manufactured and tested these components in Richardson, Texas. *Id.* Lastly, Smart Mobile argues that the WDTX has a strong local interest in this case because Smart Mobile resides in this District. *Id.* at 14.

In its reply, Apple argues that the MIMO functionality was developed by Broadcom and Qualcomm in California and Intel only provided the cellular modem in four of the sixty accused products. ECF No. 104 at 5. Apple argues that Samsung is irrelevant to the transfer analysis because it is merely a manufacturer of component of the accused products. *Id.* Further, Apple argues that Samsung manufactured a limited set of wafers for a limited period of time for only certain CPU/SoCs in this District. *Id.* As for Qorvo, Apple argues that Smart Mobile's claim that these components are necessary for the accused functionality is baseless. *Id.* at 5−6. Apple also notes that Qorvo's products are made in China and Qorvo's design team is in Oregon and North

Carolina. *Id.* at 6. Lastly, Apple argues that the WDTX does not have a local interest in this suit because Smart Mobile's move to this District is recent. *Id.*

The Court finds that the NDCA has a local interest in this matter because Apple employees that research, design, and develop the accused products reside in this District. Smart Mobile does not dispute the relevance of these employees. ECF No. 95 at 8. As discussed above, *see supra* section III(A)(i), these individuals likely possess relevant knowledge. Further, this litigation likely calls into question their work and reputation. But the Court does not find that the NDCA has a local interest in this litigation because Broadcom and Qualcomm are in California. The only evidence that Apple has provided to show that relevant Broadcom and Qualcomm employees reside in the NDCA is the declaration of Mr. Rollins. Mr. Rollins merely explains that Apple communicates with Broadcom and Qualcomm employees "located in California (and none in Texas)." ECF No. 29-1 ¶¶ 16, 18. Mr. Rollins's declaration shows that the relevant Broadcom and Qualcomm employees are in *California*—not the NDCA. The Federal Circuit has held that a local interest near, but not within the bounds of, a transferee or transferor forum should not be considered under this factor. *In re Apple Inc.*, No. 2020-135, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022). The Court declines to assume that the relevant Broadcom and Qualcomm employees are located within the bounds of the NDCA.

Similarly, the Court declines to weigh the presence of Qorvo in Richardson, Texas against transfer. Richardson is outside the WDTX. Because the Federal Circuit has instructed that a local interest near, but not within the bounds of, a transferor forum should not be considered under this factor, the Court does not consider a local interest in nearby Richardson, Texas. As for Samsung, the Court does not weigh the presence of Samsung's manufacturing facilities against of transfer. Smart Mobile has only shown that Samsung manufactured wafers for Apple for a subset of the

accused products for a limited period of time. ECF No. 95 at 13. Smart Mobile has not indicated that Samsung's conduct relates to the events that gave rise to this suit. But the Court finds that the WDTX does have a slight local interest because at least one relevant Intel witness, Dr. Gantala, reside in this District. *See supra* section III(A)(iii). This case may call into question the work and reputation of Dr. Gantala.

Finally, the Court finds that the WDTX has a local interest in this litigation because Plaintiff Smart Mobile resides in this District. Further, the inventors of the asserted patents reside in this District. As discussed above, the Court finds that Smart Mobile's presence in this District is not ephemeral. *See supra* section III(A)(ii). Thus, the Court still considers Smart Mobile's presence in this District within the Court's venue analysis. But the Court does not weigh Smart Mobile's presence in Austin heavily against transfer because Smart Mobile's move was relatively recent.

For the foregoing reasons, the Court finds that this factor weighs at least slightly in favor of transfer.

### iii. *Familiarity of the Forum with the Law That will Govern the Case*

Apple and Smart Mobile agree that this factor is neutral; both forums are familiar with the law that will govern this case. ECF No. 29 at 15; ECF No. 95 at 15. The Court agrees.

### iv. *Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Apple and Smart Mobile agree that this factor is neutral—there are no potential conflicts here. ECF No. 29 at 15; ECF No. 95 at 15. The Court agrees.

### IV.   CONCLUSION

Having considered the private and public interest factors, the Court finds that four factors are neutral, three factors favor transfer to varying degrees, and one factor disfavors transfer to the

NDCA. A decision to uproot litigation and transfer is not the consequence of a simple math problem. Instead, a moving party must show that the transferee forum is a clearly more convenient forum. Here, the Court finds that Apple has met its burden. The Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Favors transfer |
| Cost of attendance for willing witnesses | Slightly favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Weighs against transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Slightly favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

**IT IS THEREFORE ORDERED** that Apple's Motion to Transfer Venue to the Northern District of California is **GRANTED** (ECF No. 29).

**SIGNED** this 16th day of August, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE